■ JEAN MURPHY, Respondent, v BOARD OF EDUCATION OF NORTH BELLMORE UNION FREE SCHOOL DISTRICT, Appellant. — In a proceeding pursuant to CPLR article 78, *inter alia,* to compel the Board of Education of North Bellmore Union Free School District, to "recall" petitioner to a teaching position, the Board of Education appeals from a judgment of the Supreme Court, Nassau County (Morrison, J.), entered October 12, 1983, which granted the petition.

Judgment reversed, on the law, with costs, and proceeding dismissed on the merits.

On June 30, 1975, petitioner was excessed from her teaching position with the North Bellmore Union Free School District. At that time, subdivision 3 of section 2510 of the Education Law provided that persons such as petitioner were to be placed on a preferred recall list for a period of four years, commencing from the date they were excessed. In 1977, section 2510 was amended to extend an excessed teacher's eligibility on a recall list to a six-year period (L 1977, ch 790). Accordingly, petitioner remained

on the recall list for six years, until June 30, 1981. By letter dated July 1, 1981, petitioner was notified that her placement on the preferred eligibility list had expired.

In the spring of 1981, an amendment to section 2510 was introduced to extend an excessed teacher's preferred status to seven years. This amendment was adopted by the Assembly on June 4, 1981 and the Senate on July 2, 1981. It was signed into law on July 27, 1981, and, by its terms, it became effective "immediately".

In August, 1981, vacancies arose for teaching positions in petitioner's tenure area in the appellant school district. Petitioner was interviewed, but she was not offered a position. While one of the teachers hired at this time was in the same position as petitioner, i.e., had been excessed on June 30, 1975, the other, apparently, was not. Petitioner then commenced this article 78 proceeding and claimed entitlement to one of the positions on the ground, *inter alia,* that the amendment to subdivision 3 of section 2510 took effect retroactively and extended her preferred status one year, until June 30, 1982. Special Term agreed, and held that the amendment should be accorded limited retroactivity to protect those teachers whose six years of preferred status had just lapsed at the time the amendment took effect. Special Term concluded that a proper application of the amendment meant that petitioner's placement on the preferred eligibility list should have been continued until seven years from the date she was originally placed on the list, i.e., until June 30, 1982. Because one of the teachers hired after June 30, 1981 was not on the preferred list, Special Term held that petitioner had a right to that position and, therefore, directed that she be reinstated with back pay and credits for seniority and retirement as if she had been appointed for the 1981-1982 school year. We now reverse.

The 1981 amendment to subdivision 3 of section 2510, extending an excessed teacher's preferred status to seven years, by its clear and explicit terms became effective "immediately", and this occurred when the amendment was signed into law on July 27, 1981. Although we are sympathetic to petitioner's plight, the unfortunate fact is that she lost her preferred status several weeks prior to the enactment of the amendment. As a general rule statutes are to be construed as prospective only in the absence of an unequivocal expression of a legislative intent to the contrary, and where a statute directs that it is to take effect immediately, it does not have any retroactive operation or effect (McKinney's Cons Laws of NY, Book 1, Statutes, § 51, subd 6).

Courts must avoid judicial legislation even if they believe there are errors or omissions in the legislation (McKinney's Cons Laws of NY, Book 1, Statutes, § 73). Accordingly, the proceeding is dismissed. Thompson, J. P., Bracken and Lawrence, JJ., concur.

Boyers, J., dissents and votes to affirm the judgment, with the following memorandum.

Certainly, it is a primary rule of statutory construction that a law or an amendment thereto is to be given prospective rather than retroactive effect (McKinney's Cons Laws of NY, Book 1, Statutes, § 51, subd b; see *Kinney v Kinney,* 48 AD2d 1002). As a general rule, therefore, a law will not be considered retroactive unless an intention to make it retroactive is adduced from its wording (McKinney's Cons Laws of NY, Book 1, Statutes, § 51, subd b; *Coffman v Coffman,* 60 AD2d 181, 188). Concededly, there is nothing in the language of the 1981 amendment to subdivision 3 of section 2510 of the Education Law which requires that it be given retroactive effect. However, I do not believe that the mere absence of such specific language can justify a refusal to give the amendment a limited retroactive construction. As with other questions of statutory interpretation, the question of whether a statute is prospective or retroactive is to be determined by ascertaining the legislative intent. To assist us in this task, "we have a right to consider relevant conditions existing when [the statute] was adopted" (*Woollcott v Shubert,* 217 NY 212, 221). We may also consider "[t]he particular mischief it was designed to remedy and the history of the period and of the statute itself" (*Woollcott v Shubert, supra,* p 221; see, also, McKinney's Cons Laws of NY, Book 1, Statutes, § 51, subd d; *Matter of Bates v Lang,* 26 AD2d 462, 466).

In proposing the amendment to subdivision 3 of section 2510, its author, Assemblyman Leonard Stavisky, stated in an accompanying memorandum: "This bill would provide a one-year extension for the public school teachers' preferred eligible list in an attempt to compensate for *presently* dismal economic conditions" (Bill Jacket, L 1981, ch 835; emphasis supplied). However, as Special Term recognized, teachers are "customarily 'excessed' on the last date of the school year", which is, by statute, June 30 (Education Law, § 2, subd 15). If the bill was intended only to protect those teachers whose six years expired on or after July 27, 1981, it would have little practical effect until almost a year after its passage, on June 30, 1982, when the teachers who were excessed State-wide at the end of the 1976 school year reached the end of their six years of preferred status. Such interpretation of the statute does little to serve the Legislature's intent to protect against a "presently" unfavorable

economic climate. Given this stated purpose, I believe that the Legislature must have intended for the amendment to apply to those teachers who were about to complete, or had just completed, their sixth year of preferred status, i.e., those excessed State-wide in June of 1975. While those teachers excessed after 1975 certainly fall within the ambit of the bill, "presently dismal economic conditions" speaks primarily to those conditions obtaining in the summer of 1981, rather than those obtaining a year or more later. In this regard, it is significant that the bill passed the Assembly almost a month prior to when those teachers excessed in 1975 were to be removed from the recall list. Insofar as it took almost another two months before the amendment passed the State Senate and was signed into law, it appears, as Special Term noted, that "events had overtaken the pace of legislative and executive deliberation". This unfortuitous situation should not be allowed to neutralize the bill's intent to protect those teachers whose six years of preferred status expired in the summer of 1981. Accordingly, I would affirm the judgment reinstating petitioner as if she had been appointed for the 1981-1982 school year.