OPINION OF THE COURT
William H. Keniry, J.
This is an emotionally charged CPLR article 78 proceeding which has its genesis in a tragic incident in which two young pedestrians, Stacy Levitan and Paul Ciancarelli, were killed when a motor vehicle operated by Kevin Flaherty struck them. Flaherty was drunk. The accident occurred in Nassau County. Flaherty, in response to the filing against him of a superior court information, entered a guilty plea in Nassau County Court to two counts of vehicular manslaughter in the second degree and one count of operating a vehicle under the *208 influence of alcohol. On May 2, 1988,[1] Flaherty was sentenced to two concurrent indeterminate terms of imprisonment with a minimum sentence of 2V$ years and a maximum sentence of 7 years on the vehicular manslaughter convictions and a concurrent definite term of one year in prison for driving while under the influence of alcohol. Flaherty was remanded to the custody of the State Department of Correctional Services (DCS) to serve his sentence.
In 1987, the New York Legislature added article 26-A to the Correction Law which created a shock incarceration program.[2] The program’s stated purpose is to deter young, nonviolent offenders from future crime. Correction Law § 865 (1) specifies the eligibility requirements for the program. On June 27, 1988, respondent Flaherty was received into the custody of the DCS at the Downstate Correctional Facility reception center. While at the reception center, his eligibility was reviewed and the selection process commenced. The Shock Incarceration Selection Committee, established by Correction Law § 866 (2), approved respondent Flaherty’s application on July 29, 1988 for permission to participate in the shock incarceration program and forwarded his application to DCS’s central office for final review. On August 2, 1988 Flaherty was selected and approved by the central office for the program. Flaherty satisfied the then-existing eligibility criteria. He was under the age of 26, his sentence was indeterminate, he would be eligible for parole within three years, this was his first felony conviction, he was between the ages of 16 and 26 when the crime was committed and he was not convicted of any specifically enumerated disqualifying crimes. On August 22, 1988, Flaherty commenced his actual participation in the program. It was not until August 22, 1988 that enough inmates had *209 been selected to form a "platoon” to commence the program. After Flaherty entered the program, a form letter was sent on August 29, 1988 by the New York State Division of Parole to the sentencing Judge, the Nassau County District Attorney’s Office and Flaherty’s attorney advising that Flaherty would be eligible for parole release consideration, was scheduled to appear before the New York State Board of Parole during the month of January 1989 and that a determination whether to release him to parole supervision would be made at that time. The letter sought any statements or recommendations the recipients might care to present with regard to his or her knowledge of the case. The letter contained the following sentence: "District Attorneys receiving this letter may wish to advise the victim or victims of the date of the parole hearing, providing them with information as to how they may make their concerns known to the Board”. The letter concluded stating that if no reply was received within 30 days it would be assumed that the recipient did not wish to make any recommendations.
The sentencing Judge responded by letter dated September 2, 1988. She stated that there was no additional information in the possession of the court that would be of assistance in making a determination. She offered no recommendation. The District Attorney denies having received the letter.
While Flaherty was participating in the shock incarceration program, the Legislature amended Correction Law § 865 (1) effective September 1, 1988 to exclude anyone convicted of vehicular homicide from being eligible to participate in the program. Thus, under section 865 (1) as amended, Flaherty would no longer be eligible for admission into the program.
Flaherty successfully completed the six-month program. On February 16, 1989 he received a certificate of earned eligibility issued pursuant to Correction Law § 805. Flaherty was then scheduled to be released on parole on February 16, 1989.[3]
Having become informed of Flaherty’s impending release, the District Attorney of Nassau County initiated this article 78 proceeding on February 15, 1989 against Thomas A. Coughlin, III, Commissioner of the Department of Correctional Services, and Ramon J. Rodriguez, Director of the New York State Division of Parole, seeking a writ of prohibition to bar *210 the respondents from releasing Flaherty on parole. The petitioner contends that DCS was required to terminate Flaherty’s participation in the program as of September 1, 1988 as the inmate was no longer eligible to participate by virtue of the Legislature’s amendment to section 865.
On February 15, 1989 the petitioner Denis Dillon secured an ex parte order restraining the respondents Coughlin and Rodriguez from releasing Flaherty pending the hearing of the application. On the return date of the application on February 17, 1989, the court ordered that Flaherty be joined as a necessary party-respondent and determined that the proceeding was timely commenced and not barred by laches. The temporary stay preventing Flaherty’s release was continued and the proceeding was adjourned until March 3, 1989. On March 3, 1989, Flaherty appeared in the proceeding as a respondent and sought dismissal of the proceeding and an order vacating the stay. The court continued the stay pending a determination of the merits. Respondent Flaherty remains incarcerated.
The record before the court establishes that the respondent Flaherty, based upon his successful completion of the shock incarceration program, has been awarded a certificate of earned eligibility and has been granted release on parole effective February 16, 1989. The temporary restraining order prevented his release.
Flaherty’s impending release has engendered much criticism from the families and friends of the victims and others including Mothers Against Drunk Driving (MADD).[4]
Most of such communications convey requests, pleas and/or demands that the court undo what has hitherto been done and substitute its judgment for that of the screening committee which permitted Flaherty, as a then-eligible inmate, to participate in the shock incarceration program. Suffice it to say that this court is required to decide the issue raised before it and the record before the court raises no issue of substitution of judgment for an administrative decision made over seven months ago.
This court must decide an issue of statutory construction. It must do so with a detachment from sympathy and vindictive *211 ness as if it were construing say an amendment changing the same statute’s provisions of eligibility from 26 years of age to 24, or 23 or 21. In other words this court must apply legal principles decided over many, many years dealing with the construction of statutes.
The question becomes one of whether or not, upon the amendment of the Correction Law on September 1, 1988, officials of the New York State Department of Correctional Services were required to immediately remove Flaherty and anyone else of like circumstance from the shock incarceration program. Stated another way, did it become illegal on and after September 1, 1988 for Flaherty to participate in the program?
The court’s analysis starts with the premise that the petitioner has standing to initiate this challenge since a District Attorney is entrusted with the responsibility to insure that criminal sentences imposed in his county are carried into effect (Matter of Vergari v Ward, 88 Misc 2d 911, affd 60 AD2d 949).
Correction Law § 865 (1) as amended reads: "1. 'Eligible inmate’ means a person sentenced to an indeterminate term of imprisonment who has not reached the age of twenty-six years, who will become eligible for release on parole within three years, who has not previously been convicted of a felony upon which an indeterminate term of imprisonment was imposed and who was between the ages of sixteen and twenty-six years at the time of commission of the crime. Notwithstanding the foregoing, no person who is convicted of any of the following crimes shall be deemed eligible, to participate in this program: (a) a violent felony offense as defined in article seventy of the penal law, (b) an A-I felony offense, (c) manslaughter in the second degree, vehicular manslaughter in the second degree, vehicular manslaughter in the first degree,[5] and criminally negligent homicide as defined in article one hundred twenty-five of the penal law, (d) rape in the second degree, rape in the third degree, sodomy in the second degree, sodomy in the third degree, attempted sexual abuse in the first degree, attempted rape in the second degree and attempted sodomy in the second degree as defined in articles one hundred ten and one hundred thirty of the penal law and (e) *212 any escape or absconding offense as defined in article two hundred five of the penal law.” (Emphasis added.)
The 1988 amendment eliminated eligibility for the program of persons convicted of vehicular manslaughter in the first and second degrees (L 1988, ch 636). The amendment however does not state whether or not it applies retroactively. Likewise, the memorandum of the amendment’s sponsors does not address the retroactivity issue. The memorandum states:
"title of the bill:
"An act to amend the correction law, in relation to the definition of eligible inmate for shock incarceration program.
"purpose or general idea:
"To exclude from those eligible for shock incarceration persons convicted of crimes of vehicular manslaughter.
"summary of specific provisions:
"Adds to the list of offenses which preclude eligibility for shock incarceration crimes of vehicular manslaughter.
"effects of present law this bill would alter:
"Currently, persons convicted of vehicular manslaughter are eligible for shock incarceration and early release. This bill makes such persons ineligible.
"justification:
"Persons convicted of violent crimes are not allowed to participate in the shock incarceration program to obtain early release. The crime of vehicular manslaughter is an offense as, or more, serious than those which currently preclude participation in the shock incarceration program. To be found guilty of vehicular manslaughter, the defendant must be found to have been driving while intoxicated and have committed negligent homicide. Yet, while persons convicted of negligent homicide are not allowed to participate in the shock incarceration program, persons convicted of the included offense of vehicular manslaughter are. This bill corrects this incongruity in the law. Persons who have been convicted of vehicular manslaughter are guilty of a very serious offense and should not be allowed the benefits of a shortened period of imprisonment through the shock incarceration program.
"prior legislative history:
"none
"fiscal implication for state and local governments:
"none
"effective date:
"immediately upon signature into law.”
*213 It is a basic tenet of statutory construction that absent an unequivocal expression of a contrary legislative intent, statutes and amendments are construed prospectively (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [b]). A retroactive statute is defined as "one which takes away or impairs vested rights acquired under existing law” (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [a]; Rooney v City of Long Beach, 42 AD2d 34, appeal dismissed 33 NY2d 897). In People v Oliver (1 NY2d 152, 157-158), the general rule was stated: "Statutes dealing with matters other than procedure are not to be applied retroactively absent a plainly manifested legislative intent to that effect. (See, e.g., Garzo v. Maid of Mist Steamboat Co., 303 N. Y. 516, 522; Shielcrawt v. Moffett, 294 N. Y. 180, 188; Addiss v. Selig, 264 N. Y. 274, 281; Jacobus v. Colgate, 217 N. Y. 235, 240.) The rule recognizes that people guide their affairs in the light of existing laws and that it would be unfair to defeat the expectations, rights and liabilities arising under those laws by subsequent retroactive changes. Particularly in the area of criminal law, statutes which condemn an act innocent when done, or increase the punishment for previously committed crimes, have always been regarded as oppressive and prohibited, as ex post facto laws, by the Federal Constitution. (U. S. Const, art. I, § 10; see, e.g., People ex rel. Pincus v. Adams, 274 N. Y. 447, 454-455; People v. Hayes, 140 N. Y. 484, 490-491; Calder v. Bull, 3 Dallas [U. S.] 386, 390.)”
In construing a statute the court first looks to the language of the statute to determine if retroactive application was intended. Here the amendment is silent except to indicate that its effective date is immediately upon signature into law. "Although it is not an inflexible one, there exists a presumption that statutes are intended to operate prospectively only and are directed towards the future. It is to be presumed that a law was intended to furnish a rule of future action to be applied to cases arising subsequent to its enactment” (People v Ennis, 94 AD2d 746, 747). Retroactive operation of a statute is not favored and before a retroactive construction will be found, a clear expression of legislative intent must be found (County of Rensselaer v City of Troy, 120 AD2d 796).
Where an amendment provides that it is to take effect immediately, the provision directing immediate effect does not give it retroactive operation or effect (Murphy v Board of *214 Educ., 104 AD2d 796, affd 64 NY2d 856). In the Murphy case, the Supreme Court, Appellate Division, Second Department, stated the rule as follows: "As a general rule statutes are to be construed as prospective only in the absence of an unequivocal expression of a legislative intent to the contrary, and where a statute directs that it is to take effect immediately, it does not have any retroactive operation or effect”. (104 AD2d, supra, at 797; emphasis added.)
The key language in the statute provides that "no person who is convicted of any of the following crimes shall be deemed eligible to participate in this program” (Correction Law § 865 [1]). Ordinarily, use of the word "shall” in a statute indicates that prospective construction only was contemplated (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [b]). The Legislature by using the words "who is convicted of’ looks to the future not the past when a determination of a convict’s eligibility to participate in the program is to be made.
The court finds no words manifesting any intent on the part of the Legislature that the amendment to Correction Law § 865 be given retroactive operation (Matter of President of Delaware & Hudson Canal Co., 129 NY 105, 112). Looking to the memorandum submitted by the amendment’s sponsors, there is no indication that a retroactive application was intended. The court as part of its research reviewed the Governor’s Bill Jacket kept with reference to the subject amendment and among the numerous letters submitted both in support of and in opposition to the legislation, only one correspondent addressed the retroactivity issue. The respondent DCS, in a letter dated August 30, 1988 to the Governor’s counsel, stated, "[Pjlease note that inmates presently in the shock incarceration program who have been convicted of vehicular manslaughter in the first or second degree will not be removed from the program solely on account of such conviction”.
The Legislature was acutely aware of the "incongruous” situation whereby inmates convicted of vehicular manslaughter, such as respondent Flaherty, were permitted legally to apply for and participate in shock incarceration with the outcome being a significant reduction in the length of their minimum periods of imprisonment. The Legislature, in eliminating the eligibility of such inmates, acted prospectively. It failed to state that a retroactive application of the more restricted eligibility requirements was intended. The court cannot supersede the Legislature’s prerogative and direct *215 retroactive application of the amendment in this case (see, Matter of Palsyn, 100 AD2d 716, 717, n 2). Since respondent Flaherty, at the time that his eligibility for the program was determined, satisfied all of the minimum requirements, respondent Department of Correctional Services acted within the scope of its delegated authority in admitting him into the program. The court holds that the respondent Department of Correctional Services after September 1, 1988 was not obligated to review Flaherty’s eligibility status for the purpose of imposing the more stringent eligibility requirements enacted by the Legislature. Having been found duly eligible to participate in the shock incarceration program, respondent Flaherty was and is entitled to any benefits which accrued based upon his participation therein.
The petition is dismissed, without costs.

. The parties’ papers differ as to the date of Flaherty’s sentencing. The verified petition recites May 2, 1988, the affirmation of Flaherty’s attorney recites May 3, 1988 and the affidavit of respondent DCS recites May 12, 1988.

. The six-month-long program is modeled after military "boot camps” and subjects participants to a paramilitary regime of "rigorous physical activity, intensive regimentation and discipline and rehabilitation therapy and programming” (Correction Law § 865 [2]). Successful participants who become released are subject to intensive parole supervision and, if they violate the conditions of their parole, are reincarcerated for a period of time that is at least equal to the minimum period of incarceration imposed by the court, with no credit for the six-month period of shock incarceration. In addition shock releases may be given special conditions which restrict their community activities in relation to the behavior underlying the original offense. Violation of any special condition results in revocation of parole.

. Flaherty’s stated conditions of parole include six special conditions imposed by the Board of Parole dealing for the most part with prohibitions of consumption of alcohol and operating any motor vehicle.

. The court received petitions and letters from the families and friends of the victims. Although not part of the formal record, the parties did not object to the court’s receipt of such submissions and agreed that the court might read and give appropriate consideration to such materials.

. The words emphasized are the words added to Correction Law § 865 (1) by the amendment which became effective on September 1,1988.