OPINION OF THE COURT
Joseph Harris, J.
the ISSUES
Trial of the above-consolidated actions is scheduled to commence on September 30, 1996. The third-party defendant, Transport Associates., Inc., was the plaintiffs employer at the time of the accident giving rise to these actions. Transport Associates, Inc., is under the protection of a bankruptcy court in Kentucky. While it appears that the third-party action against the employer has been commenced and that the employer has been served, said third-party defendant employer has not yet appeared in the action due to the automatic stay in bankruptcy. Defendant and third-party plaintiff, Holman Contract Warehousing, Inc., has moved in Bankruptcy Court to lift the automatic stay against Transport Associates, Inc.
On September 10, 1996, Governor Pataki signed into law a package of amendments to the Workers’ Compensation Law and diverse related statutes, including CPLR 1401 (contribution), and CPLR article 16 (joint and several liability), known as the "Omnibus Workers’ Compensation Reform Act of 1996”, effective immediately, which primarily forbids third-party actions against employers for contribution except in cases where the employee sustained what the statute refers to as "grave injury”, defined as one of the following: "death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability.” {See, Workers’ Compensation Law § 11, as amended by L 1996, ch 635, § 2.)
The injuries in the instant case, although serious, do not constitute "grave injury” as defined in the statute. Further, al *670 though "effective immediately”, the new "Omnibus Workers’ Compensation Reform Act of 1996” is silent as to whether it is retroactive to accidents occurring prior to its effective date of September 10, 1996, or prospective only, applicable solely to accidents occurring subsequent thereto. If retroactive, the third-party action against Transport Associates, Inc. and thousands like it, would be subject to a motion to dismiss; if prospective only, the new statute would not affect prior accidents and third-party actions against employers already commenced.
At a pretrial conference held September 13, 1996, a motion was made by plaintiff, pursuant to CPLR 603, for an order severing the third-party action so as not to delay the commencement of trial pending a judicial determination of whether the new statute and its component parts are retroactive or prospective only. That motion is opposed by defendant and third-party plaintiff, Customized Transport, Inc.
THE FACTS
Plaintiff, Timothy Gleason, a tractor-trailer driver in the employ of third-party defendant Transport Associates, Inc., was severely injured on September 22, 1992, when several home appliance ranges, packed in cartons, fell on him while he was in the process of unloading them from a tractor-trailer owned by plaintiff’s employer, Transport Associates, Inc., and leased to defendant, Product Distribution Company, and used to haul appliances manufactured by defendant, General Electric Company, to warehouses in the northeast.
THE OMNIBUS WORKERS’ COMPENSATION REFORM ACT OF 1996 — RETREAT FROM DOLE v DOW CHEM. CO.
Section 2 of this Act (L 1996, ch 635), in pertinent part, amends section 11 of the Workers’ Compensation Law to provide that: "An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless * * * such employee has sustained a 'grave injury’ which shall mean only one or more of the following: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriple *671 gia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by external physical force resulting in permanent total disability.”
Section 2 of the Act (L 1996, ch 635) also provides that: "For purposes of this section the terms 'indemnity’ and 'contribution’ shall not include a claim or cause of action for contribution or indemnification based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the claimant or person asserting the cause of action for the type of loss suffered.”
Section 4 of the Act (L 1996, ch 635) amends CPLR 1401 to provide: "Except as provided in sections 15-108 and 18-201 of the general obligations law, sections eleven and twenty-nine of the workers’ compensation law, or the workers’ compensation law of any other state or the federal government, two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.” (Emphasis added.)
• Section 5 of the Act (L 1996, ch 635) amends CPLR 1601 (1), providing: "[T]hat the culpable conduct of any person shall not be considered in determining any equitable share herein to the extent that action against such person is barred because the claimant has hot sustained a 'grave injury’ as defined in section eleven of the workers’ compensation law.”
As aforesaid, it is necessary for the court to determine whether the provisions of said Act relating to Dole v Dow Chem. Co. (30 NY2d 143) claims shall be given prospective or retroactive effect during the trial of this action. If the court holds that the Act is to be applied retroactively, it follows then that the severance must be granted, the third-party action must be dismissed, and the jury must be instructed that they are not to consider Transport Associate’s culpable conduct, if any, in determining the equitable shares of the parties.
Section 6 of the "Omnibus Workers’ Compensation Reform Act of 1996” (L 1996, ch 635) amends CPLR 1602 (4) to provide that the limitations on joint and several liability in claims for personal injury contained in CPLR 1601 shall: "4. not apply to claims under the workers’ compensation law or to a claim against a defendant where [such defendant has impleaded a *672 third party] claimant has sustained a ''grave injury’ as defined in section eleven of the workers’ compensation law to the extent of the equitable share of any person against whom the claimant is barred from asserting a cause of action because of the applicability of the workers’ compensation law [to the extent of the equitable share of said third party] provided, however, that nothing in this subdivision shall be construed to create, impair, alter, limit, modify, enlarge, abrogate, or restrict any theory of liability upon which any person may be held liable. ” (Emphasis added.)
Section 90 of the Act (L 1996, ch 635) provides, as to each of the aforesaid provisions: "This act shall take effect immediately”.
The first determination to be made by the court to decide the motion before it is whether the Act is retroactive or prospective only. The starting point is a journey back into the murky and rigid times of the common law and a study of the history of the development of the law of contribution and indemnification.
THE JUDICIAL WORLD PRIOR TO DOLE[1] CONTRIBUTION — THE COMMON LAW REVISITED
If there was one eternal verity in the common law it was that there was no right of contribution among joint tortfeasors.
The concept, "indemnification”, was indeed known to the common law, but this was a far cry from the concept commonly known as "contribution”.
As stated in McFall v Compagnie Mar. Belge (304 NY 314, 327-328 [1952]):
*673 "[T]here is a fundamental distinction between contribution and indemnity. The right of contribution is not founded on nor does it arise from contract and only ratable or proportional reimbursement is sought in an action for contribution * * *
"The right to indemnity, as distinguished from contribution, is not dependent upon the legislative will. It springs from a contract, express or implied, and full, not partial, reimbursement is sought.”
The tort revolution respecting the law of modern-day contribution commenced on September 1, 1928 with the enactment by the State Legislature of section 211-a of the Civil Practice Act, that section providing for the first time, as did its successor, CPLR 1401, that a right of contribution exists in favor of one or more joint tortfeasors after a joint judgment had been rendered.
This was only a partial victory for the proponents of contribution for it gave "life and death” power over joint tortfeasors to the plaintiff, who, if he elected not to sue one of the wrongdoers, could effectively prevent a joint judgment and accordingly, contribution (see, Baidach v Togut, 7 NY2d 128 [1959]). Any idea that the defendant who was sued might implead his fellow malefactor was dispelled by Fox v Western N. Y. Motor Lines (257 NY 305 [1931]), holding that there can be no impleader for contribution. If defendants were charged with being joint tortfeasors in pari delicto, cross claims for contribution were improper because of the substantive requirements in former CPLR 1401 requiring the recovery of a prior joint judgment and payment in excess of the pro rata share.[2]
In the meantime, in order to ameliorate the overly rigid limitations of the contributions statute, there developed an "implied contract” of indemnity based upon an essentially artificial dichotomy between "active” and "passive” negligence. This was again an unsatisfactory "all or nothing” concept upon which to base the relative culpability of joint .tortfeasors and a fair apportionment of financial responsibility for the harm engendered to plaintiff by the negligence of the several wrongdoers involved.
What was needed to unleash the full powers of contribution was a judicial or legislative act, or combination thereof, firstly *674 that would remove from plaintiff the absolute right to determine which negligent tortfeasor or tortfeasors should bear the burden of compensating plaintiff for the harm received by him, and secondly, that would eliminate the theory of active and passive negligence and replace same with procedures that would enable as between joint tortfeasors a true apportionment of the relative negligence of each and payment by each for the harm engendered to the plaintiff according to that relative responsibility.
On March 22, 1972, climaxing the revolution in the tort law of contribution commenced on September 1, 1928 by enactment of Civil Practice Act § 211 (a), there flashed and thundered across the judicial firmament — like the glare of a rocket and the burst of a bomb — the decision of the Court of Appeals in Dole v Dow Chem. Co. (30 NY2d 143, supra) followed thereafter by the 1974 amendments to CPLR 1401, effective September 1, 1974, promulgated at the request of the Judicial Conference.
Decrying the fact that New York law failed to. achieve the desirable goal of " 'equitable loss sharing by all the wrongdoers’ ” (Dole v Dow Chem. Co., supra, at 150), the Court of Appeals in Dole (supra) conferred upon joint tortfeasors a relatively free right of impleader[3] regardless as to whether the tortfeasor seeking contribution was initially sued by the plaintiff or not, or by bringing an independent action if not initially sued.
It further struck the rule of active-passive negligence and substituted in its place new procedures for an apportionment of all liability, regardless of the respective negligence of each tortfeasor, from full to none and all percentages in between.[4] The 1974 amendments to CPLR 1401 and General Obligations Law § 15-108, enacted as chapter 742 of the Laws of 1974 at the behest of the Judicial Conference, sought to clarify and codify the new substantive and procedural rules established by the Court of Appeals in Dole (supra).
This is the law of contribution as we know it today or at least on September 10, 1996.
*675 RETROACTIVITY
Civil Practice Act § 211-a (enacted Sept. 1, 1928), Dole v Dow Chem. Co. (30 NY2d 143, supra [decided Mar. 22, 1972]), and the 1974 amendments to CPLR 1401 were giant steps forward in unleashing the law of contribution from its common-law restraints, and in achieving the desirable goal of " 'equitable loss sharing by all the wrongdoers’ ”. {Dole v Dow Chem. Co., supra, at 150.) For policy reasons unrelated to the history of contribution as recited above, the "Omnibus Workers’ Compensation Reform Act of 1996” is a step backward. It is an economic decision designed to entice new business to New York State by lowering employer liability insurance rates and, where applicable, apportioning liability and contribution for same between joint tortfeasors not on an equitable basis measured by relative culpability, but upon an economic basis designed to make New York State more palatable to new business.
Whereas Civil Practice Act § 211 (a), Dole v Dow Chem. Co. (supra), and the 1974 amendments to CPLR 1401 were "vestiture” acts, enhancing the vested rights of joint tortfeasors respecting contribution, the "Omnibus Workers’ Compensation Reform Act of 1996” is a "divestiture” statute of constitutional proportions, diminishing and taking away from joint tortfeasors vested rights to contribution or indemnity from negligent employers unless the employee has sustained "grave injury” as defined in the statute.
Once again, the new statute has an economic basis rather than a remedial one. While this purpose does not personify evil per se, it does greatly impact upon the decision as to whether or not the new statute should be held to be retroactive — that is, to govern all accidents preceding the effective date of the statute (Sept. 10, 1996), or prospective only — that is, only to new accidents occurring subsequent thereto.
In Deuscher v Cammerano (256 NY 328 [1931]), the Court of Appeals was called upon to decide whether Civil Practice Act § 211-a should be applied to a case in which the accident underlying the suit occurred prior to the effective date of the statute. Holding that the statute creating contribution was applicable to causes of action which accrued earlier, the Court emphasized the fact that the statute "in no way increased the liability of any defendant; in fact, it lessened it” {supra, at 330). The Court noted that prior to the passage of Civil Practice Act § 211-a each tortfeasor was subject to liability to the plaintiff for the entire amount of the latter’s damage and determined that the statute did no more than provide a means
*676 whereby such entire liability could be decreased by one defendant and shifted in part to another defendant who himself could have been obligated to pay the entire amount of the liability of other defendants.[5] Because Civil Practice Act § 211-a in no way increased the liability of any defendant, the Court concluded that the statute was remedial only and could therefore be applied to occurrences arising prior to its passage (see, 19th Ann Report of NY Jud Conf, at 247-259).
In Kelly v Long Is. Light. Co. (31 NY2d 25 [1972]), the Court of Appeals reached the same result respecting the remedial sections of Dole v Dow Chem. Co. (supra) and held in said case that the courts have the power to apply the Dole rule in any decision rendered subsequent to the Dole decision (Mar. 22, 1972), no matter when the underlying tort occurred or when the basic lawsuit was commenced, opting to retroactively apply the law established in Dole to any accident occurring prior to the Dole decision. But as we have seen, the result of the changes in the "Omnibus Workers’ Compensation Reform Act of 1996” is diametrically opposite to the result emanating from Dole (liability enhanced, not lessened) and requires a different view of the issue of retroactivity.[6] If the "Omnibus Workers’ Compensation Reform Act of 1996” is applied retroactively it will, once again, result in the dismissal of thousands of actions pending by defendants against third-party defendants in which, as in the instant case, the plaintiff has not sustained a "grave injury”.
*677 The rules of determining whether a statute is to be applied retroactively or prospectively are contained in McKinney’s Consolidated Laws of NY, Book 1, Statutes § 51 et seq. Thus section 51 (a) states: "A retroactive statute is defined as one which takes away or impairs vested rights [acquired under existing law]; it is a law which looks backward affecting acts occurring or rights accruing before it came into force.”
Section 51 (b), entitled "Prospective or retroactive construction”, states:
"Generally, statutes are construed as prospective, unless the language of the statute, either expressly or by necessary implication, requires that it be given a retroactive construction * * *
"This has been said to be a primary rule of statutory construction. Stated differently, a construction of a statute which will give it a retroactive operation is not favored by the courts, but on the contrary, the laws [sic] favors a prospective interpretation wherever possible. It is well settled also that a statute will not be given a retroactive construction unless an intention to make it retroactive is to be deduced from its wording, and a law will not receive a retroactive construction unless its language, either expressly or by necessary implication, requires that it be so construed. A clear expression of the legislative purpose is required to justify a retrospective application * * *
"[I]f all the language of a law can be satisfied by giving it a prospective operation only, it should not apply retrospectively. Accordingly, a statute should not be given a retroactive effect when it is capable of any other construction. Retroactive constructions are likewise to be avoided where such operation would cause a statute to work an injustice * * *
"A retroactive statute should be construed conservatively as the general rule is against such construction.”[7]
*678 Section 51 (c), entitled "Presumption”, recites: "Statutes are generally presumed to operate prospectively and not retroactively.”
Section 51 (d) is entitled "Legislative intent” and sets forth:
"Generally, the question of whether a statute should be construed as prospective or retrospective is to be determined by ascertaining the legislative intent * * *
"The surest guide in determining the legislative intent, is in the language of the statute itself, but the situation which the statute is designed to correct must also be taken into consideration in determining the legislative intent as to the retroactive operation thereof.”
Section 51 '(e), entitled "Validity of retroactive statutes”, declares:
"The Legislature * * * may not enact retroactive statutes which will impair constitutional rights * * *
"The Legislature may not * * * pass a statute which, by reason of its retroactive operation, impairs the obligation of a contract; deprives a person of due process of law, or equal protection of the laws; [or] interferes with a vested right”.
Section 52, entitled "Amendatory statutes”, states: "Generally, an amendment will have prospective application only, and will have no retroactive effect unless the language of the statute clearly indicates that it shall receive a contrary interpretation.”
Section 53, entitled "Statutes affecting rights or liabilities”, recites:
"A statute generally will not be applied retroactively where it would deprive one of a substantial right, or affect antecedent rights * * *
"Laws that attempt retroactively to create a liability in relation to a transaction as to which no liability previously had attached, although not necessarily unconstitutional, are gener *679 ally so arbitrary, harsh and oppressive as to be regarded as presumptively invalid.”[8]
Section 54 (a), entitled "Remedial statutes and curative acts”, recites: "Remedial statutes constitute an exception to the general rule that statutes are not to be given a retroactive operation, but only to the extent that they do not impair vested rights.”[9]
Finally, section 55 of McKinney’s Consolidated Laws of NY, Book 1, Statutes, entitled "Procedural matters”, holds, in pertinent part: "Actually* * * such statutes are not retroactive at all, but are prospective under the rule that procedural matters are governed by the law in force when they arise. Thus procedural statutes may not retroactively destroy rights already accrued”.
In Matter of Duell v Condon (84 NY2d 773, 783) the Court of Appeals held: "Whether a statute is to be applied prospectively or retroactively generally requires determination of legislative intent (see, Longines-Whittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443, 453; McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [b], [d]). When a statute creates a new right of action, it is presumed that the Legislature intended the statute to be applied prospectively only unless a contrary intent clearly appears (see, Jacobus v Colgate, 217 NY 235, 240-242).”
In Matter of Ayman v Teachers’ Retirement Bd. (9 NY2d 119, 125), the Court stated: "This view is in accord with the general rule of construction that statutes as well as constitutional provisions are to be construed as prospective only, unless a clear expression of intent to the contrary is found”. (See also, Matter of Mulligan v Murphy, 14 NY2d 223, 226.)
In a case involving an amendment to the Workers’ Compensation Law that restricted the rights of individuals, the Appellate Division, Third Department, in Matter of Lusardi v Eugene Lusardi, M.D., P. C. (167 AD2d 3, 4-5) held: "Where, as here, the Legislature provides that the statutory provision shall take effect immediately, prospective application of the amendments is appropriate (see, Murphy v Board of Educ., 104 AD2d 796, *680 797, affd 64 NY2d 856; see also, County of Rensselaer v City of Troy, 120 AD2d 796, 797). This general rule has been applied in cases involving the Workers’ Compensation Law (see, Matter of Small v Gibbs Press, 248 NY 513). The cases relied upon by the insurers, which involve retroactive application of amendments to the Workers’ Compensation Law, extended the rights of injured claimants, thereby furthering the legislative objective of compensating injured employees (e.g., Matter of Busch v Austin Co., 37 AD2d 648, 649). In the present case, a prospective application of the statutory amendments is appropriate because the amendments restricted the right of an employee who is the sole shareholder and officer of the employer corporation by requiring an affirmative election for coverage (L 1982, ch 396), a requirement not in existence when the policy was issued. Prospective application of the statutory amendments at issue will not alter or affect the existing workérs’ compensation insurance contracts between the employer and the insurers.”
Similarly, the same Court held, in Matter of Moynihan v New York State Employees’ Retirement Sys. (192 AD2d 913, 914), in which the sole issue was whether a 1986 amendment to the Retirement and Social Security Law should be given retroactive effect: "We find lacking any indication of intent to provide retroactivity. Quite to the contrary, the amendment recites that it shall take effect immediately, which language this Court has held provides a clear indication that prospective application is appropriate (see, Matter of Lusardi v Eugene Lusardi, M.D., P. C, 167 AD2d 3, 4; see also, County of Rensselaer v City of Troy, 120 AD2d 796, 797) * * * ( * * * see also, Matter of Thomas v Bethlehem Steel Corp., 63 NY2d 150, 154; McKinney’s Cons Laws of NY, Book 1, Statutes § 52).”
Professor Siegel, recognized as an authority in the field of legal practice, at page 260 of his treatise New York Practice (2d ed) asserts unequivocally that "the Dole case with the statutory package that codifies it [CPLR art 14] pronounces in essence a rule of substantive law. Dole creates a right of contribution where none existed before, as substantive a doing as the law can manage.” Put into expanded language, this translates into an assertion that Dole (supra) and the new CPLR 1401 are not "remedial” in nature but bestow upon joint tortfeasors new vested rights that cannot be divested without the clearest expression of legislative intent and for good and sufficient reason (that is not present here). That is not to say that the right to contribution cannot be taken away from future tortfeasors *681 (that has not yet vested); but it is to say that past tortfeasors, to whom the right to contribution has already vested, cannot under the circumstances, language, and purpose of the new "Omnibus Workers’ Compensation Reform Act of 1996”, be divested of that right of contribution.
The "Omnibus Workers’ Compensation Reform Act of 1996” recites in section 1 (L 1996, ch 635) that: "It is the intent of the legislature that * * * employers obtain a degree of economic protection from devastating lawsuits * * * It is the further intent of the legislature to create a system which protects injured workers and delivers wage replacement benefits in a fair, equitable and efficient manner, while reducing time-consuming bureaucratic delays, and repealing Dole liability except in cases of grave injury.”
Thus, not only is the Act to take effect "immediately”, thereby indicating an intent that it be applied prospectively, but the legislation is silent as to any retroactive application. Further, the language recited above indicates a prospective intent of the Legislature to "create a system”[10] related to culpability and apportionment.
Further evidence of the Legislature’s intent that the Act not be applied retroactively is the failure to provide for redistribution of the windfall profits to the workers’ compensation insurance carriers that would result from a retroactive application.
For several years before the enactment of the "Omnibus Workers’ Compensation Reform Act of 1996”, the insurance companies that sold workers’ compensation insurance to the businesses of this State set their annual premiums based upon the anticipated risks that would arise during the policy period. One of those risks was Dole claims made against the employer by parties being sued by an employee of the business.
During the debate over the passage of the Act, it was estimated that the Dole portion of all workers’ compensation premiums in the State of New York was approximately 6.2%. The compromise that resulted in the modification of the Dole rule rather than its abolition was supposed to result in a 50% savings in the DoZe-related premiums, or a savings of approximately 3.1% in workers’ compensation premiums. If the Act were to be applied retroactively, that would result in a "windfall” profit for the workers’ compensation carriers of approximately $1 billion for the premiums collected over the past decade for risks (i.e., accidents that occurred before September *682 10, 1996 involving non-"grave injuries”), that would suddenly disappear.
As the legislation contains no provision for returning those premiums to the businesses that paid them, a finding that the Legislature intended these provisions to be applied retroactively would require this court to hold that the New York State Legislature intended workers’ compensation insurance carriers to receive a windfall profit of $1 billion for which they have collected premiums during the past decade, with now no liability for negligent accidents arising from the risks for which the premiums were paid.
Dole (supra) was intended to level the playing field of tort apportionment; the intent of the "Omnibus Workers’ Compensation Reform Act of 1996” was to tilt that field for the ostensible purpose of enticing new business to New York. But retroactivity would not warm the business climate of New York and attract new business to this State, for the relative liability insurance rates between employer tortfeasors and non-employer tortfeasors have already been set and paid with respect to accidents occurring prior to September 10, 1996 and only future rates — determined by anticipated future actuarial considerations — would be relevant.
Nothing in the "Omnibus Workers’ Compensation Reform Act of 1996” indicates a legislative intent that it be retroactive — but common sense and legislative purpose and anecdotal legislative history of the recent debates on the bill dictate to the contrary — that the provisions of the Act should be given prospective application only, and limited to actions or claims where the accident occurs after September 10, 1996.
One commentator has suggested that in addition to a consideration of the extent of reliance upon prior law, the courts should also consider the purpose to be served by the new standard and the eifect on the administration of justice of a retroactive application of the new standard. (See, Farrell and Wilmer, Dole v Dow Chemical Co., "A leading decision — but whereV’, 39 Brook L Rev 330, 337.)[11]
These considerations have been discussed earlier and support a determination that the new "Omnibus Workers’ Compensation Reform Act of 1996” should be given application *683 only to new accidents occurring subsequent to its effective date of September 10, 1996.
CONCLUSION
For all the foregoing reasons, the court concludes that the "Omnibus Workers’ Compensation Reform Act of 1996” is not retroactive but prospective only to accidents occurring subsequent to the effective date of the statute, September 10, 1996.
For the time being, and under the circumstances of this case, that answers the question respecting the motion to sever, which is denied without prejudice as unnecessarily impinging upon the doctrine of conservation of judicial resources.
A second trial requires the time and resources not just of the parties, but of the court system and facilities, defendants will need to duplicate their expert testimony and that of other witnesses, and there may be inconsistent verdicts and confusion over verdict sheets due to disparate applications of the law. Additionally, the complications presented by the "Omnibus Workers’ Compensation Reform Act of 1996” as set forth above suggest that defendants may be denied the opportunity to present a defense if, for example, they are prohibited from referring to the.fault of the employer in the first trial and then prohibited from denying fault in the second trial by a plaintiffs verdict in the first trial.
More important is the effect of the Bankruptcy Court stay on the forward progress of this case. If that is lifted within a reasonable time this entire case can go forward after a reasonable respite to allow the third-party defendant time to prepare for trial.
Accordingly, the trial of this action in its entirety now scheduled for September 30, 1996, is postponed for a period of 60 days following the lifting of the bankruptcy stay, if that occurs. If the bankruptcy stay is not lifted within a reasonable time, further application for a severance should be made.

. Respecting the history of contribution and indemnification under the common law, in addition to case law the court is indebted to the Practice Commentaries of Joseph M. McLaughlin to CPLR 1401 (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1401:l et seq.\ the four monographs entitled Contribution, prepared by M.E. Occhialino, Professor of Law, Syracuse University, commissioned by the Judicial Conference, and contained in the Annual Report of that body (19th Ann Report of NY Jud Conf, at 217-259), upon which chapter 742 (§ 4) of the Laws of 1974, effective September 1, 1974, which became the current CPLR 1401, was enacted by the New York State Legislature, Professor David D. Siegel, the preeminent authority on practice in the State of New York and author of New York Practice (2d ed), and, of course, the Honorable Francis Bergan, whose explorations on the seas of torts aboard the ship Dole-Dow, created a new judicial world.

. It had been argued that a hypothetical statement of a cross claim for contribution was no more premature than a cross claim for indemnity, which was permissible (see, CPLR 3019 [b], setting up the requirements for a cause of action, as it then existed), but that argument never prevailed.

. See impact of General Obligations Law § 15-108 as it attempts to encourage settlement of lawsuits and at the same time maintain the new freedom of contribution.

. For a fuller understanding of the new rules of Dole (supra) and their treatment by the Court of Appeals, it is worthwhile to compare the opinion rendered by the Court of Appeals in reversing the decision rendered by the Appellate Division (Dole v Dow Chem. Co., 35 AD2d 149), with said opinion rendered by the Appellate Division.

. Note the similarity of this situation to the situation created by the new "Omnibus Workers’ Compensation Reform Act of 1996” respecting contribution by negligent employers where the employee did not sustain "grave injury”. The employer is forgiven for all culpability and same must be borne by the other joint tortfeasors. Once again, the policy underlying this result may be good and sufficient but it does enhance the liability of nonemployer joint tortfeasors in favor of employer tortfeasors, shifting payment for the culpability of the employer tortfeasor to others, on an inequitable basis. In a partial sense it is a return from an equitable loss-sharing system to the discredited active-passive negligence system.

. If in Deuscher (supra) and Kelly (supra) the Court concluded that neither Civil Practice Act § 211-a nor the Dole decision (supra) increased in any way the liability of any defendant, and that as a result of this the statute and decision were remedial only, and could be applied to an occurrence arising prior to the said enactment and decision, it must logically follow that where, as in the "Omnibus Workers’ Compensation Reform Act of 1996”, the relative liability among joint tortfeasors shifts, decreasing the liability of one and increasing the liability of another, the statute is substantive and not remedial, and ought to apply only to accidents occurring subsequent to the effective date of the statute, September 10, 1996.

. While the Governor’s approval memorandum respecting the "Omnibus Workers’ Compensation Reform Act of 1996” (L 1996, ch 635) states in part: "Of primary importance is the retroactive repeal of the Court of Appeals’s [sic] decision in Dole v. Dow, 30 N. Y. 2d 143 (1972) (Dole’)”, that is not what the statute says, and constitutes only one voice in the legislative process. (1996 McKinney’s Session Laws of NY, at 1912 [emphasis added].) Many members of the Legislature, including its prime sponsor in the Assembly, considered the repeal prospective only. Be that as it may, the rules of statutory construction mandate that intent be determined by an analysis of the face of the statute, not by the language of the legislative and executive *678 debates — what in fact the statute says, not what its individual proponents and protagonists say they intended it to say.
Indeed, upon the question of whether it was intended to be retroactive, or prospective only, the legislative debates reveal that the "Omnibus Workers’ Compensation Reform Act of 1996” was deliberately left silent — the issue to be decided by the courts under the rules for statutory construction. Otherwise, under the heated political climate in which the statute was conceived, it could not have been enacted.

. This is what is done in the amendment to section 11 of the Workers’ Compensation Law by shifting liability for negligence from the employer to the nonemployer joint tortfeasor in cases other than those involving "grave injury”.

. Bear in mind that the "Omnibus Workers’ Compensation Reform Act of 1996” is not even a remedial statute. It is a substantive statute that shifts vested rights of joint tortfeasors — increasing the liability of some and decreasing the liability of others.

. Clearly indicating an "in futuro” act.

. The authors concluded that those standards, initially set forth in Stovall v Denno (388 US 293, 297 [1967]), were appropriate also to Dole (supra). (See also, Johnson v New Jersey, 384 US 719 [1966], deciding the issues of retroactivity re: Miranda v Arizona, 384 US 436.)