Betty Jean Sochor, Appellant, v International Business Machines Corp., Respondent.

Second Department, December 27, 1982

APPEARANCES OF COUNSEL

*Cutler & Klein, P. C.* (*Marsha Cyd Solomon* of counsel), for appellant.

*Seward & Kissel* and *Thomas R. Behan* (*M. William Munno* and *Sheri A. Van Greenby* of counsel), for respondent (one brief filed).

**OPINION OF THE COURT**

Titone, J.

The question presented on appeal is whether petitioner may satisfy a judgment against her former husband for arrearages in alimony by compelling respondent International Business Machines Corp. (IBM), his former employer, to pay her monthly income to which he would be entitled were he to elect to receive income at the present time from respondent's pension plan. In essence, petitioner

seeks to exercise her former husband's right to elect to receive pension benefits in order that she might satisfy her judgment against him.

Under a separation agreement entered into by petitioner and her former husband, Joseph Sochor, approximately 12 years after they were married, the latter agreed to pay her alimony in the sum of $60 per week. In December, 1965, the marriage was dissolved by a Mexican divorce decree which provided, *inter alia,* that the terms of the separation agreement were not merged in the divorce decree, but survived it and were incorporated thereby by reference.

The record reveals that petitioner's efforts to enforce her alimony rights under the agreement have been thwarted for many years by her former husband. Since about 1973, he has successfully concealed both his person and assets from her. The only "asset" of her former husband known to exist is his rights under respondent's pension plan.

In April, 1979, petitioner secured a money judgment against her former husband in the sum of $15,858.48. It covered arrears in alimony from September 27, 1974, to April 2, 1979. Sometime thereafter she petitioned Special Term for an order pursuant to CPLR 5225 (subd [b]) to compel respondent "to pay to [her] the monthly income to which Joseph Sochor [her former husband] * * * is entitled" pursuant to respondent's pension plan, until her judgment is satisfied. She alleged that although her former husband had an option to receive benefits under the plan he had not yet elected to do so.

### PENSION PLAN; RIGHTS OF THE FORMER HUSBAND

The IBM retirement plan was established pursuant to the Federal Employee Retirement Income Security Act of 1974 (ERISA, US Code, tit 29, § 1001 *et seq.*) "to assist eligible employees in their retirement by providing a monthly retirement income to be paid out of the trust funds". Contributions to the fund are made solely by respondent. The funds, which are held by one or more trustees, provide most of the benefits payable under the plan.[1]

---

1. A participant whose retirement income exceeds certain limits is paid the excess from the general operating funds of respondent pursuant to an "excess benefit plan" as defined in subdivision (36) of section 3 of ERISA (88 US Stat 838) or from the general operating funds of respondent.

Until such time as benefits become payable, no part of the funds is designated or apportioned for the benefit of any employee or former employee.

The former husband, who left respondent's employ before retiring, had, at the time of his departure, completed 15 or more years of continuous service. Under respondent's pension plan he would become eligible to receive "vested rights income" after reaching 65 years of age and applying for such benefits. Alternately, since he is now more than 55 years of age, the former husband may elect *eo instante* to receive payments ("early retirement") at a significantly reduced level (cf. *Pepitone v Pepitone,* 108 Misc 2d 12).

### DETERMINATION OF SPECIAL TERM

Respondent moved to dismiss the petition or, in the alternative, for summary judgment on the grounds that (1) it was not in possession or custody of any money or other personal property in which the judgment debtor, Joseph Sochor, had "an interest or which he [was] entitled to possess" within the meaning of CPLR 5225 (subd [b]), and (2) benefits under its retirement plan were exempt from levy by petitioner under the terms of the plan itself and the provisions of ERISA.

Special Term, treating the application of petitioner as one for sequestration, granted respondent's motion to dismiss the petition, without prejudice to renewal whenever and if ever the former husband should actually exercise his rights to receive benefits under respondent's pension plan. The court stated, *inter alia,* that until the former husband actually elected to receive benefits thereunder, "the pension rights remain[ed] inchoate and, thus, are not yet ripe for sequestration." We disagree with Special Term's reasoning and conclusion.

### DETERMINATION ON APPEAL

Contrary to the position taken by Special Term, we conclude that the interest of the former husband in respondent's pension plan has both vested and matured.

Generally, "vested interest" has been defined, *inter alia,* as a present fixed right or title to a thing even though the

right to possession or enjoyment may be postponed to some uncertain time in the future, as distinguished from a future right which may never materialize or ripen into title (31 CJS, Estates, § 5). It is not the uncertainty of enjoyment in the future, but the uncertainty of the *right of enjoyment* which makes the difference between a "vested" or "contingent" interest (*Mahoney v Mahoney,* 98 Conn 525, 534). In a similar vein, a "vested right" has been defined as a right complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs and is fixed or established and no longer open to controversy (*State ex rel. Milligan v Ritter's Estate,* 46 NE2d 736, 743 [Ind App]).

With respect to "vested" pension rights, it has been held that the right to a retirement benefit "vests" when an employee acquires an irrevocable interest in the fund created by his own contributions, and/*or* the *contributions of his employer (Fithian v Fithian,* 10 Cal 3d 592, 596, cert den 419 US 825, reh den 419 US 1060). A retirement benefit "matures" when the employee has an unconditional right of payment which occurs only after the conditions precedent to the payment of the benefits have taken place or *are within the control of the employee* (*Williamson v Williamson,* 203 Cal App 2d 8, 11; cf. *Brown v Brown,* 15 Cal 3d 838, 842). It has also been held that at retirement age, an inchoate right ripens into a pension right in such amount as shall be determined by the *age, wage, and years of service of the member* (*Alt v Long Is. R. R. Co.,* 81 Misc 2d 99, affd 54 AD2d 724).

In the instant situation, it seems clear that the former husband enjoyed a "vested" interest in the subject pension plan when he completed 15 years of service with respondent, and that once he attained the age of 55 his right to receive benefits therefrom "ripened", i.e., "matured" (cf. *Fithian v Fithian, supra*).

Having thus determined that petitioner's former husband has an interest in respondent's pension plan or fund which has vested and matured, the issue still remains whether in his stead petitioner may exercise his right to receive early retirement benefits, and after exercising such

option, may a fortiori sequester the income therefrom to satisfy her judgment for alimony arrears.

Under CPLR 5201 (subd [a]), a money judgment may be enforced "against any debt, which is past due or which is yet to become due, *certainly or upon demand of the judgment debtor*" (emphasis supplied; see *Morris Plan Ind. Bank of N.Y. v Gunning,* 295 NY 325; *Godbout v Irwin,* 272 App Div 1020; 6 Weinstein-Korn-Miller, NY Civ Prac, par 5201.04). It has also been held under such section that a judgment may be enforced against any obligation to pay *for services actually performed, or any obligation that is matured at the time the creditor seeks to enforce his or her judgment* (see *Shambach v General Elec. Co.,* 6 AD2d 327).

With respect to CPLR 5201 (subd [b]), which permits a money judgment to be enforced "against any property" that can be "assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested," it has been stated that such provision continues prior law in that it entitles a judgment creditor to proceed against any property in which the judgment debtor has a recognizable interest, that is not exempt from enforcement (6 Weinstein-Korn-Miller, NY Civ Prac, par 5201.07; cf. *Hohenrath v Wallach,* 37 AD2d 248, app dsmd 30 NY2d 674; *Alexandre v Chase Manhattan Bank, N.A.,* 61 AD2d 537).

From the foregoing brief analysis of CPLR 5201 (subds [a], [b]), it is clear that a judgment creditor may resort to any of the judgment debtor's property to satisfy his judgment, so long as the property is not otherwise protected by statute (*Plymouth Rock Fuel Corp. v Bank of New York,* 91 Misc 2d 837, affd 102 Misc 2d 235; cf. 33 CJS, Executions, § 18; *Alexandre v Chase Manhattan Bank, N.A., supra*). Only the interest of the debtor in the property or asset may be reached by the creditor, and only at the time and to the extent it has ripened or matured (*Matter of Cohen v First Nat. City Bank,* 49 Misc 2d 141). As succinctly and accurately stated by Professor David D. Siegel in his Practice Commentaries to CPLR 5201 (McKinney's Cons Laws of NY, Book 7B, CPLR C5201:15, p 70): "For purposes of execution after judgment as well as attachment before judgment, the judgment creditor's (plaintiff's) right to a

given item of property is deemed *coextensive with — the same as — the judgment debtor's (defendant's) own interest in it.* The theory is that the judgment creditor steps into the shoes of the judgment debtor." (Emphasis supplied.)

In this instance it is clear that the former husband, assuming he is still living, has a recognizable interest in respondent's pension plan, in that having attained the age of 55 benefits are available and payable to him from the pension fund (cf. *Pepitone v Pepitone,* 108 Misc 2d 12, 17, *supra*). A fortiori, under the concept that "the judgment creditor [stands in] the shoes of the judgment debtor", we conclude that petitioner, as the judgment creditor of her former husband, has the same right to such fund as her former husband, in accord with pertinent provisions contained in CPLR article 52, entitled "Enforcement of Money Judgments" (see CPLR 5221 *et seq.;* see, also, *Matter of Cohen v First Nat. City Bank,* 49 Misc 2d 141, *supra; Matter of Capitol Distrs. Corp. v 2131 Eighth Ave.,* 285 App Div 541, affd 1 NY2d 842). Stated otherwise, as long as the judgment debtor (the former husband) has the right to compel payment of benefits from respondent's pension fund *eo instante,* then so has the judgment creditor (the petitioner), who stands in the judgment debtor's place (see *Henegan v Merchants Mut. Ins. Co.,* 31 AD2d 12; see, also, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5201:15, pp 72-73).

We have considered respondent's contention that the former husband's "right to elect" under the plan is "personal and non-transferable", and that the payment options available thereunder require that only the participant may exercise the election, and find it to be untenable. First, there is no language in the plan nor in any statute that precludes petitioner from exercising the right of her former husband to receive early retirement benefits. Second, the law is settled that the provisions contained in ERISA do not extend to traditional support obligations. Rather, they insure that the employee and his beneficiaries reap the ultimate benefits due upon his retirement (*American Tel. & Tel. Co. v Merry,* 592 F2d 118, 124). ERISA does not operate to immunize pension payments from family sup-

port obligations (*Pepitone v Pepitone,* 108 Misc 2d 12, 14, *supra*).

Accordingly, the order of Special Term denying petitioner's application to compel respondent to pay petitioner monthly income which her former husband would receive under an election by him for early retirement benefits must be reversed and the application granted. However, before taking the necessary procedural steps to satisfy her judgment under CPLR article 52, petitioner should apply, in her former husband's stead, to receive early retirement benefits payable to him by complying with "Article 7 — Claims Procedure" of respondent's pension plan.[2] Once it is indicated that benefits are payable to petitioner from the funds of the plan (as the former husband's alter ego), petitioner may then proceed to satisfy her judgment pursuant to CPLR article 52 (see CPLR 5225 *et seq.*).

DAMIANI, J. P., LAZER and BOYERS, JJ., concur.

Order of the Supreme Court, Dutchess County, dated February 3, 1981, reversed, on the law, without costs or disbursements, petitioner's application is granted in accordance with the opinion herein, and respondent's motion to dismiss is denied.

---

2. The plan provides that a participant must give at least six months' prior written notice to respondent's payroll department of an election to receive early retirement benefits, unless the plan administrator waives such notice requirement. It must further be noted that petitioner will have to establish, *inter alia,* at the time of her application, that her former husband is still alive.