OPINION OF THE COURT
Stephen A. Ferradino, J.
On December 26, 1994, plaintiff Thomas Majewski, while in the employ of Adirondack Mechanical Corporation (hereinafter Adirondack), was performing repair work on the premises of the Broadalbin-Perth Central School District. For reasons not presently relevant, he fell from a ladder, allegedly sustaining a comminuted fracture of the right wrist, a bruised chest, left hip pain, 100% chance of future degenerative arthritis in the right wrist, lumbar strain, and resultant scarring. Barred by the State’s Workers’ Compensation Law from bringing an action against his employer, he brought suit against the school district. In turn, on January 18, 1996, the district commenced a third-party action against Adirondack for contribution and/or indemnification, permitted by the holding of Dole v Dow Chem. Co. (30 NY2d 143), codified in CPLR article 14. All would have proceeded as hundreds of similar cases have since Dole, except that, on September 10, 1996, Governor George Pataki signed legislation amending section 11 of the Workers’ Compensation Law. The effect of the legislation was that all third-party actions for common-law indemnification and contributions against an employer were barred, except when the employee sustains a "grave injury” as defined by section 2 of the Omnibus Workers’ Compensation Reform Act of 1996 (L 1996, ch 635). Pursuant to that definition, a grave injury "shall mean only one or more of the following; death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and perma *431 nent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability”. Important to the case at bar, section 88 of the Act provides for an audit by the Superintendent of Insurance "of all workers’ compensation insurance carriers licensed to do business in this state * * * to determine the value as of December 31, 1996 of any reduction in reserves * * * required to be established for losses or claims * * * that result from the application of provisions established pursuant to sections two through nine of this act and the application of section 90 to these provisions”. Section 90 provided that the legislation was to take effect "immediately”. However, though the Governor’s message accompanying his approval of the bill states that the intent of the bill was to bar pending claims, the legislation itself did not specifically refer to pending claims.
Adirondack has now moved for summary judgment on the ground that, first, the plaintiff did not sustain a grave injury within the meaning of the amendment, and, second, that the third-party action is now barred by Workers’ Compensation Law § 11 (as amended by L 1996, ch 635). Without seriously disputing that the plaintiff did not sustain a grave injury within the meaning of the statute, a threshold truly difficult to reach, both the school district and plaintiff oppose the motion on the ground that the amendment to section 11 of the Workers’ Compensation Law has no retroactive effect, and does not apply to pending actions.
Initially, the court must address the issue of whether the school district possesses a vested right to its cause of action. Though much of the parties’ arguments revolve around whether it was the Legislature’s intent to give the amendment retroactive effect, if the district possesses a vested right to its cause of action for indemnification and/or contribution, due process restraints would prevent retroactive elimination of that cause of action (Periconi v State, 91 Misc 2d 823; People ex rel. Reibman v Warden, 242 App Div 282).
A right to contribution or indemnification may be distinguished from a vested right. A vested right "has been defined as a right complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs and is fixed or established and no longer open to controversy” (Sochor v International Bus. Machs. Corp., 90 AD2d 442, 445, citing State ex rel. Milligan v Ritter’s Estate, 46 NE2d 736, 743 [Ind App]). A right to contribu *432 tion or indemnification may be characterized as contingent and inchoate, rather than vested, for if the defendant is not found to be liable and pays no money to an injured plaintiff, there is no obligation to which a party must contribute or indemnify (Cubito v Kreisberg, 69 AD2d 738, affd 51 NY2d 900; Lasker-Goldman Corp. v Delma Eng’g Corp., 32 AD2d 513). With no vested right to indemnification or contribution, the school district possesses no constitutional right of property precluding the elimination of the third-party inchoate claims pending on the effective date (Gauge Lbr. Co. v Rowley, 326 US 295; Matter of Clark v Rockowitz, • 54 AD2d 698; Weber v Kowalski, 85 Misc 2d 349).
Having found no constitutional barrier to the application of the amendment to pending claims, the court must turn to an analysis of whether the amendment was intended to apply to such claims. To that end, the parties have urged the court to apply various rules of statutory construction.
Majewski and the school district rely upon the presumption that statutes are to operate prospectively, not retroactively (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [c]). It has been held that the Legislature must state specifically that a statute would have retroactive effect (Simonson v International Bank, 14 NY2d 281; Shielcrawt v Moffett, 294 NY 180), and that the statement that an amendment is to take effect immediately does not give it retroactive application (Matter of Moynihan v New York State Employees’ Retirement Sys., 192 AD2d 913; Murphy v Board of Educ., 104 AD2d 796, affd 64 NY2d 856). Though statutes can be read to have retroactive effect, such application is usually limited to legislation relating to procedure, and not to that affecting substantial rights (Matter of Johnson v American Mach. & Foundry Co., 230 App Div 585).
To the contrary, Adirondack relies upon what it sees as the legislative intent to have the amendment applied retroactively as indicated in the Governor’s message. Additionally, Adirondack points to section 88 (L 1996, ch 635), and its audit procedures, which are to be implemented at the end of 1996. If the amendment, signed into law so late in 1996, is not made applicable to pending actions, section 88 and its audit procedures would be rendered ineffective, a construction not favored (McKinney’s Cons Laws of NY, Book 1, Statutes § 144).
The court finds that the general rules of construction relied upon by the school district and Majewski are not determinative of this motion, and it finds that the amendment is applicable to pending claims, and bars such claims.
*433 Initially, the court rejects the contention that the right to contribution and indemnification is so substantial a right as to preclude its retroactive demise. In Cooney v Osgood Mach. (81 NY2d 66), the Court of Appeals was faced with a choice of law question. The State of Missouri does not recognize the right of contribution against an employer, the right originally recognized in this jurisdiction in Dole (supra). In determining the law to be applied, that of New York or Missouri, the Court was required to make an analysis of conflicting interests. Chief Judge Kaye wrote:
"The thrust of Osgood’s argument is that New York’s law permitting contribution is so strong that any encroachment upon the right violates fundamental public policy. In our choice of law analysis, of course, we explicitly considered New York’s interest in allowing contribution and concluded that it is significant. Osgood’s view, however, is that no abrogation of the right may be tolerated. We disagree.
"Certainly, contribution is not a deeply rooted tradition of the common weal (Loucks, 224 NY, at 111), having been introduced into our law only relatively recently. Moreover, as noted, availability of contribution is not invariably guaranteed. And while Osgood claims that being forced to pay more than its equitable share of plaintiffs damages is unfair, 'public policy is not measured by individual notions of expediency and fairness or by a showing that the foreign law is unreasonable or unwise’ (Schultz, 65 NY2d, at 202). In the considered judgment of the Missouri Legislature, employers providing workers’ compensation benefits are not amenable to claims for contribution. New York law is to the contrary. But as Judge Cardozo observed: 'Our own scheme of legislation may be different. * * * That is not enough to show that public policy forbids us to enforce the foreign right. * * * We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.’ (Loucks v Standard Oil Co., 224 NY, at 110-111.) Osgood has not sustained its 'heavy burden’ of proving that the Missouri statute is offensive to our public policy (Schultz, 65 NY2d, at 202).” (Cooney v Osgood Mach., supra, at 79-80.)
The Court of Appeals teaches us in Cooney (supra) that the right to contribution, and by implication indemnification, is not so substantial that it may not be abrogated. (Chief Judge Kaye also indicates that, because availability of contribution is not guaranteed, the right is not vested.) This court would observe that if the policy of the Missouri Legislature may take *434 precedence over the not too entrenched right of contribution in New York, New York’s Legislature should be able to abrogate the same inchoate right.
Examining the various, competing rules of construction, the court finds one to be most persuasive and, indeed, controlling. Though certainly the message of Governor Pataki, acting in his legislative capacity (McKinney’s Cons Laws of NY, Book 1, Statutes § 14), is evidence of legislative intent (see, People v Ricci, 113 Misc 2d 103; Grello v Daszykowski, 58 AD2d 412; Floyd v New York State Urban Dev. Corp., 41 AD2d 395; Engle v Talarico, 39 AD2d 362), and it was the Governor’s understanding that the amendment would be applied retroactively, central to the determination of legislative intent is the presence in the legislation of section 88 (L 1996, ch 635). Were the amendment to be construed as Majewski and the school district urge, section 88, as it relates to an audit to be conducted at the conclusion of this year, would have no meaning or purpose. This amendment is a major and far reaching piece of legislation, and it must be assumed that it was well debated and considered. It must be concluded that the intent of the Legislature was to affect pending claims, thus providing records of the reserves to be audited. The court cannot conclude that the Legislature included the audit provision, woven into the fabric of the amendment, and yet intended that the Superintendent have no results to audit (McKinney’s Cons Laws of NY, Book 1, Statutes § 144). The need to interpret the amendment in such a way as to find relevancy in section 88 overcomes any general presumption in favor of prospective application of the amendment (McKinney’s Cons Laws of NY, Book 1, Statutes § 144).
Finally, the court has been directed by the opponents of this motion to the recent decision of Justice Joseph Harris in Gleason v Holman Contract Warehousing (— Misc 2d —, 1996 NY Slip Op 96476 [Sup Ct, Albany County, Sept. 18, 1996]), in which Justice Harris reached a result diametrically opposed to that reached here. Though that case is typically well researched by the Justice, he did not address the import of section 88 of the Act (L 1996, ch 635) in determining the intent of the Legislature. (Perhaps the issue was not addressed by the parties.) Nor did he analyze whether, in fact, a right to contribution or indemnification is a vested or inchoate right. Another decision, by Justice R. Doyle, Supreme Court, Suffolk County, Flynn v New York Life Ins. Co. (NYLJ, Oct. 24, 1996, at 31, col 3), reached the same result as Justice Harris. However, Justice Doyle relied heavily upon the decision of Justice Harris, and *435 similarly did not address the import of section 88 to the analysis.
Parenthetically, Justice Harris points to the fact that if the amendment is applied retroactively, the insurance companies which have collected dividends based upon the greater risks under the former law, would potentially receive a windfall profit when those risks retroactively disappear. However, the message of Governor Pataki, and especially the inclusion of section 88 in the Act (L 1996, ch 635), provides convincing evidence of legislative intent. When legislative intent is established, a court must carry out the legislation, "regardless of consequences” (McKinney’s Cons Laws of NY, Book 1, Statutes § 148; Matter of Town of Smithtown v Moore, 11 NY2d 238). It is not for this court to second-guess the wisdom of the Legislature and the Governor. Shmdd the new legislation result in the feared windfall, the remedy may be found in corrective legislation.
Accordingly, based upon the amendment eliminating a cause of action for third-party contribution in this context, the motion for an order granting summary judgment is granted.