OPINION OF THE COURT
John P. DiBlasi, J.
On September 10, 1996, New York State Governor George Pataki signed the Omnibus Workers’ Compensation Reform Act, chapter 635 of the Laws of 1996 (the Act), which he proclaimed as legislation which will "fulfill our government’s obligation to business and labor by substantially reducing the costs of th[e] [workers’ compensation] system on our State’s employers while protecting the interests of injured workers” (Governor’s Mem approving L 1996, ch 635, 1996 McKinney’s Session Laws of NY, at 1912). The issue before this court is whether the centerpiece of the Act, which repeals the right to contribution recognized by the Court of Appeals in Dole v Dow Chem. Co. (30 NY2d 143 [1972]), retroactively bars the third-party action commenced in this case.
FACTUAL BACKGROUND
Plaintiff, a correction officer employed by third-party defendant Westchester County Department of Corrections (the Corrections Department), was injured on December 1, 1994 when a bookshelf manufactured by defendant Space Saver Corp. (Space Saver), and distributed to the Corrections Department *149 by defendant Modern Office Systems, Inc. (Modern Office), fell on her at the second-floor library of the Westchester County Correctional Facility. As a result of the accident and the injuries sustained by her, plaintiff received benefits pursuant to General Municipal Law § 207-c. On or about April 13, 1995, plaintiff commenced this action in New York County against Space Saver, Modern Office and Inner Space Systems, Inc. Subsequently, this action was transferred to Westchester County.
On or about September 9, 1996, Space Saver instituted a third-party action against the Corrections Department and the County of Westchester, seeking contribution and indemnification. On the present motion, the County of Westchester and the Corrections Department (hereinafter referred to collectively as the County) seek dismissal of the third-party complaint on the ground that it fails to state a cause of action against them. More particularly, they contend that the recent amendment to Workers' Compensation Law § 11 (the Alternative Remedy provision) bars the claims made against them by Space Saver. The determination of this motion requires this court to decide whether this recent amendment, set forth in section 2 of the Act (Section 2), is retroactive in its effect, and bars such claims which arise from accidents that occurred prior to the date of its enactment.[1]
AMENDMENT OF THE WORKERS’ COMPENSATION LAW
Section 2 amends the Alternative Remedy provision by declaring, in relevant part, that: "An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury5 ”
*150 (Workers’ Compensation Law § 11, as amended by L 1996, ch 635, § 2). After the date upon which this statutory immunity to employers is effective, no third-party actions against employers may be brought unless the source of the employer’s obligation to contribute to or indemnify the third party arises from "a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to” such contribution or indemnification (Workers’ Compensation Law § 11, as amended by L 1996, ch 635, § 2).
Section 2 also defines a "grave injury” which will support a third-party action for contribution or indemnification as only one or more of the following: "death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability” (Workers’ Compensation Law § 11, as amended by L 1996, ch 635, § 2). Since the existence of a grave injury is the key element of Space Saver’s potential claim against the County, it is necessary to examine the extent of injury asserted by plaintiff.
plaintiff’s injury
In her complaint, plaintiff states that as a result of the accident at the Westchester County Correctional Facility, she was: "rendered sick, sore, wounded, and bruised about her body and limbs by the impact of the shelving upon her body, and has suffered and will continue to suffer severe, permanent injuries to her head, neck and back, causing plaintiff continuing physical pain, disability and mental anguish” (complaint 12). On the present motion, the County contends that the complaint, "although vague, alleges no injury which could be deemed 'grave’ as defined by the amended section 11 of the Workers’ Compensation Law” (Davey affirmation 11). The court agrees with the County as to this issue.
While plaintiff may have suffered serious injuries as a result of the accident, a determination which must in the end be left to the finder of fact at a trial, it is plain that none of the injuries claimed by her in the complaint fall within the restricted definition of "grave injury” which now applies to third-party actions against employers. Indeed, as to this issue, neither plaintiff nor, more significantly, Space Saver, takes an *151 opposing position. Consequently, the court concludes that no grave injury was sustained by plaintiff, and that the third-party complaint must be dismissed unless the amendment to the Alternative Remedy provision does not apply to accidents occurring, and suits commenced, prior to September 10, 1996, when the Act was signed into law. Thus, the court must now turn to the issue of the effective date of the amendment to section 11 of the Workers’ Compensation Law.
RETROACTIVITY OF THE ACT
The court is aware of five decisions, four of which have been reported, which have addressed the retroactivity issue. Three of those decisions, Gleason v Holman Contract Warehousing (170 Misc 2d 668 [Sup Ct, Albany County 1996]), Flynn v New York Life Ins. Co. (NYLJ, Oct. 24, 1996, at 31, col 3 [Sup Ct, Suffolk County 1996]), and Materna v ZCWK Assocs. (NYLJ, Feb. 12, 1997, at 31, col 1 [Sup Ct, Kings County 1997]) concluded that the amendment has prospective application only. However, in Majewski v Broadalbin-Perth Cent. School Dist. (169 Misc 2d 429 [Sup Ct, Fulton County 1996]), the court held that the amendment is retroactive, and applies to all pending as well as future actions. The holding of Majewski was followed by the court in an unreported decision in the case of Ciampitti v Perennially Green (Sup Ct, Queens County 1996, index No. 19139/93). For the reasons that follow, this court agrees with the Majewski court that the amendment to section 11 of the Workers’ Compensation Law is retroactive in its application.
The rules to which the court may turn in order to determine the retroactivity issue have been oft-stated and were thoroughly analyzed by the courts in Gleason (supra) and Majewski (supra). "Statutes are generally applied prospectively in the absence of express or necessarily implied language allowing retroactive effect” (Dorfman v Leidner, 76 NY2d 956, 959 [1990]) or "a clear legislative indication to the contrary” (Matter of Rudin Mgt. Co. v Commissioner of Dept. of Consumer Affairs, 213 AD2d 185 [1st Dept 1995]). "An exception to the general rule is that, to the extent they do not impair vested rights or bestow additional rights, remedial statutes are to be given retroactive construction” (Matter of City of New York [Long Is. Sound Realty Co.], 160 AD2d 696, 697 [2d Dept 1990]). Remedial statutes are those whose purpose is to correct imperfections in prior law. (Matter of Cady v County of Broome, 87 AD2d 964, 965 [3d Dept 1982], lv denied 57 NY2d 602 [1982]).
*152 In this case, Space Saver argues that the Act is "a non-remedial piece of legislation, representing] an economic decision designed to make New York State a more enticing climate for business” (mem of law in opposition, at 4). The court disagrees with that position. Clearly, the amendment to the Alternative Remedy provision is designed to lessen the impact of the decision in Dole (supra), later codified in CPLR article 14, which recognized the right to contribution in actions such as the one at bar. Since its evident purpose is remedial, retroactive construction may be granted to it if it does not impair vested rights (see, Matter of Cady v County of Broome, supra, 87 AD2d, at 965). Consequently, the Court must determine as a preliminary matter whether the right to contribution is one which is vested.
A right is vested if it is one which is complete and consummated (Sochor v International Bus. Machs. Corp., 90 AD2d 442, 445 [2d Dept 1982], revd on other grounds 60 NY2d 254 [1983]), i.e., that it is "fixed or established and no longer open to controversy”. Rather than being such a fixed or settled right, "contribution or indemnification may be characterized as contingent and inchoate * * * for if the defendant is not found to be liable and pays no money to an injured plaintiff, there is no obligation to which a party must contribute or indemnify” (Majewski v Broadalbin-Perth Cent. School Dist., supra, 169 Misc 2d, at 431-432).
Additionally, it is clear that the right to contribution is not one which is so substantial that it may not be legislatively impaired. As explained by our Court of Appeals, the right to contribution is a recent development in our State’s law, and thus "contribution is not a deeply rooted tradition of the common weal” (Cooney v Osgood Mach., 81 NY2d 66, 79 [1993]). Thus, in Cooney the Court held that under conflict of law principles, the law of the State of Missouri was to be applied in an action commenced in New York notwithstanding that Missouri does not recognize the right to contribution in third-party actions of the type at bar.
Since the right to contribution is one which is neither vested nor beyond impairment by operation of other laws, this court concludes that there is no bar to retroactive application of the amendment to the Alternative Remedy provision. The court now turns to the issue of whether such effect should be given to the amended statute.
As observed by the other courts which have previously addressed the retroactivity question, application of the general *153 rules of construction does not resolve this issue. For example, McKinney’s Consolidated Laws of NY, Book 1, Statutes § 51 (d) provides that "[generally, the question of whether a statute should be construed as prospective or retrospective is to be determined by ascertaining the legislative intent”. Unfortunately, in this case, there are conflicting pronouncements of that intent by those most directly involved with the enactment of the amendment to the Alternative Remedy provision.
As noted in Flynn, one of the sponsors of the bill stated on the Assembly floor that " '[i]t is not our intention to limit the rights of parties to a lawsuit filed after the law takes effect but involving a claim arising from an accident that occurred before the law took effect’ ”, and that the amendment " 'means that as of the date of the hill being signed any accident that occurs from that date forward will be subject to the grave injury standard’ ” (Flynn v New York Life Ins. Co., NYLJ, Oct. 24, 1996, supra, at 31, col 4 [emphasis added]). Taking the completely opposite stance, in his message approving the Act, Governor Pataki stated that:
"Of primary importance is the retroactive repeal of the Court of Appeals’s [sic] decision in Dole v. Dow, 30 N.Y.2d 143 (1972) ('Dole’). The Dole decision imposed an outdated and unfair doctrine that had been rejected in every other state: that a primary defendant in an action may seek unlimited contribution or indemnification from an employer as a third party to the action although a direct action against the employer would be barred by the exclusivity provisions of the workers’ compensation system * * *
"This new system, which takes effect immediately, is enacted with the specific intent of maximizing savings in workers’ compensation premiums through its application to all cases currently pending in the courts of our State wherein the primary action has neither been settled nor reduced to judgment” (Governor’s Mem, op. cit., at 1912-1913 [emphasis added]).
Obviously, these conflicting statements cannot be reconciled. Nor can the Governor’s message be merely dismissed as not reflecting legislative intent, on the ground asserted by Space Saver, i.e., because the Governor is the executive, and not the lawmaking, branch of our State government. To the contrary, "[i]n exercising his power to approve or veto legislation, the Governor performs a legislative function” (Matter of Four Maple Dr. Realty Corp. v Abrams, 2 AD2d 753, 754 [2d Dept 1956], appeal dismissed 2 NY2d 837 [1957], appeal dismissed 355 US 14 [1957]). Thus viewed, this court agrees with Justice *154 Rappaport’s conclusion in Materna that "resort to extrinsic aides in deciphering the intent of the statu[t]e is unavailing” (Materna v ZCWK Assocs., NYLJ, Feb. 12, 1997, supra, at 31, col 2).
Any effort to determine the retroactivity issue from the provisions of the Act related to its effective date is similarly unsuccessful. Section 90 (L 1996, ch 635) of the Act (Section 90) provides that "[t]his act shall take effect immediately”. Notwithstanding the facial urgency engendered by this language, "where a statute directs that it is to take effect immediately, it does not have any retroactive operation or effect” (Murphy v Board of Educ., 104 AD2d 796, 797 [2d Dept 1984], affd 64 NY2d 856 [1985], citing McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [b]).
Moreover, as Space Saver argues, and as observed by the court in Flynn (supra), other portions of Section 90 establish specific effective dates for particular sections of the Act. For example, "section fifty-seven of th[e] [A]ct shall take effect 180 days after it shall have become a law and shall apply to all claims pending on or after such date” (L 1996, ch 635, § 90). Similarly, "section sixty of th[e] [A]ct shall apply to discrimination claims filed on or after the date on which it shall have become a law” (L 1996, ch 635, § 90).
By using language setting particular dates for some of the Act’s provisions, and further, by making some provisions of the Act specifically applicable to claims pending as of a future date, the Legislature has evinced a knowledge of how to give retrospective treatment to actions or claims already in existence upon the effective date of its enactments. Thus, it is understandable that some courts would take the view expressed by Justice Doyle in Flynn that "[t]he absence of any provision requiring the retroactive application to pending actions of the partial prohibition against obtaining contribution or indemnification from employers supports the inference that retroactive application was not intended by the legislature” (Flynn v New York Life Ins. Co., NYLJ, Oct. 24, 1996, supra, at 31, col 4).
Nevertheless, this court does not agree that the failure to state that the amendment to the Alternative Remedy provision is retroactive requires that it be given only prospective treatment. It is equally possible that the use of such retroactivity language with the effective date of other provisions of the Act was thought necessary by the Legislature to avoid any question that such other provisions, having an effective date different from the remainder of the Act, would be interpreted *155 as having a prospective effect only, because the Act in general was intended to be fully retroactive. While such an effort to determine legislative intent is obviously an exercise in speculation, it demonstrates that in this instance, it cannot be said that "[t]he surest guide in determining the legislative intent, is in the language of the statute itself’ (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [d]).
Thus, while the general rules of statutory construction are often helpful, "are not to be ignored and, in appropriate cases, may even be compelling, they are not ritualistic incantations meriting slavish application” (Matter of Beary v City of Rye, 44 NY2d 398, 410-411 [1978]). Where, as here, the intent of the statute cannot be gleaned by considering to the language of the enactment as a whole, analysis of separate sections of a law is permissible, and may yield a more meaningful result (see, supra, at 411).
In this case, at least one of the Act’s provisions is without meaning or effect if the amendment to the Alternative Remedy provision is deemed prospective in application.[2] That provision, addressed by the court in Majewski (supra), is set forth in section 88 of the Act (the Audit Provision). Subdivision (a) of the Audit Provision states in pertinent part that: "The superintendent of insurance is hereby directed to perform an audit of all workers’ compensation insurance carriers * * * and the state insurance fund, to determine the value as of December 31, 1996 of any reduction in reserves, hereinafter referred to as the reserve adjustment, required to be established for losses or claims pursuant to section 1303 of the insurance law and, concerning the state insurance fund, section 88 of the workers’ compensation law that result from the application of provisions established pursuant to sections two through nine of this act and the application of section 90 to these provisions” (L 1996, ch 635, § 88 [a] [emphasis added]). Sections 2 through 9 of the Act encompass the various provisions which amend Workers’ Compensation Law § 11, and CPLR 1401 and 1603, and create a new article 18-A of the General Obligations Law.[3]
It is apparent that for the Audit Provision to be more than mere legislative surplusage, there must be some "reduction in reserves” to be audited for the calendar year ending December 31, 1996. The reserves which are the subject of the Audit Pro *156 vision are "loss or claim reserves” which are required by Insurance Law § 1303. In relevant part, Insurance Law § 1303 requires every insurer[4] to "maintain reserves in an amount estimated in the aggregate to provide for the payment of all losses or claims incurred on or prior to the date of [an annual statement mandated by statute], whether reported or unreported, which are unpaid as of such date and for which such insurer may be liable, and also reserves in an amount estimated to provide for the expenses of adjustment or settlement of such losses or claims.” While Insurance Law § 1303 does not define the term "reserve”, generally "it means a sum of money, variously computed or estimated, which, with accretions from interest, is set aside, 'reserved,’ as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued but contingent and indefinite as to amount or time of payment” (68 NY Jur 2d, Insurance, § 168, at 248).
Clearly, by providing for an audit to determine the reduction in reserves that will result by virtue of the amendment to the Alternative Remedy provision and its effective date as established by Section 90 (L 1996, ch 635), the Audit Provision contemplates that there will be a diminution of the amount of funds that workers’ compensation carriers will be obligated to set aside. Since this reduction comes from the loss or claims reserves, it is apparent that the Legislature expected there to be a concomitant reduction in the number of existing or future claims made by third parties against the employers of individuals who are or will be collecting workers’ compensation payments as a result of job-related injuries. That being true, it follows, as the court concluded in Majewski (supra), that Section 90 must be intended to confer retroactive effect upon the amendment to section 11 of the Workers’ Compensation Law.
This conclusion is buttressed by the language of subdivision (a) of the Audit Provision which immediately follows that portion of the section quoted above. Subdivision (a) concludes by stating that "[t]he reserve adjustment shall be an obligation of each carrier and the state insurance fund and shall be payable by each such carrier and the state insurance fund to the superintendent of insurance as a special charge consistent with a payment schedule developed by the superintendent” (L 1996, ch 635, § 88 [a]). As was true with respect to the language of the Audit Provision directing that an audit be conducted, this *157 statutory language clearly envisions that there will be a reduction in the reserves which workers’ compensation carriers will be required to maintain as a direct result of the retroactive repeal of Dole liability except where grave injury has been sustained by a worker. Only if such a reduction occurs can there be any such financial obligation on the part of the carriers, and such reduction will be experienced only if the number of presently asserted and assertable third-party claims is diminished by the termination of all claims not involving grave injury. Thus, as with the audit aspect of section 88 of the Act, this portion of the section establishing an additional financial obligation on the part of the carriers has meaning and effect only if the amendment to the Alternative Remedy provision is retroactive.
Moreover, the creation of this financial obligation on the part of the carriers answers, at least in part, the concern expressed in Gleason (supra) and echoed by Space Saver as to the windfall that insurers will gain by virtue of the retroactive repeal of Dole liability. As observed by Justice Harris in Gleason, insurers are expected to realize a profit of approximately $1 billion for premiums collected during the past decade for non grave injury risks by virtue of the change in the Alternative Remedy provision. Justice Harris viewed the Legislature’s failure to include a provision in the Act for the return of those premiums to the businesses that paid them as an additional reason to conclude that the amendment should have prospective application only. However, by creating an additional financial obligation to be met by the insurers related to the reserve reduction that will immediately be experienced by retroactive application of the amendment, the Legislature has taken some steps to return the excess premiums, albeit indirectly, to those entities that paid them.
A further step aimed at reclaiming some of that excess profit is found in section 87 of the Act. That section directs that all workers’ compensation carriers shall pay a special assessment in the aggregate amount of $98 million, which shall be deposited in the State’s general fund by no later than March 1, 1997. As one commentator has observed, the requirement that the carriers pay this substantial amount of their savings to the State is consistent with the Legislature’s intention that such savings accrue immediately from the retroactive repeal of Dole liability except in grave injury cases (see, Minkowitz, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 64, Workers’ Compensation Law § 11, 1997 Pocket Part, at 25).
*158 Finally, analysis of the impact of applicable Statutes of Limitation upon third-party claims supports retrospective application of the amendment to the Alternative Remedy provision. An individual has three years from the date of an accident resulting in an injury in which to commence suit against a tortfeasor (CPLR 214 [5]). Where a claim for contribution or indemnification may be asserted, that defendant, in turn, has six years in which to assert such claim (CPLR 213; Blum v Good Humor Corp., 57 AD2d 911 [2d Dept 1977]). However, any cause of action that may be brought for contribution or indemnification does not accrue until the defendant has been compelled to make payment to the injured individual (supra).
As applied to accidents which occurred prior to September 10, 1996, initial complaints may be filed as late as September 1999. Even if recoveries are made within as little as one year from that date, claims for contribution or indemnification could be filed as late as the year 2006. Certainly, if as appears from the Governor’s message and the enactment of sections 87 and 88 of the Act, the Legislature’s intent is to accomplish a significant and immediate cost savings for employers by reducing their insurance premiums, it would be inconsistent with that aim that Dole liability would continue to exist for another decade except in grave liability situations.
In sum, although the drafters of the Act could have expressed their intention more clearly, and thus avoided the confusion and inconsistent judicial review of the issue as to its effective date, which will ultimately have to be resolved by our Court of Appeals, this court concludes that the Act was intended to accomplish the retroactive repeal of Dole (supra), except in "grave injury” cases, as asserted by the Governor, and as argued by the County at bar.
CONCLUSION
As determined above, plaintiff has not suffered a "grave injury” which will support a third-party action against the County. Therefore, in view of this court’s determination that the amendment to section 11 of the Workers’ Compensation Law is retroactive in effect, no action may be brought by Space Saver against the County for contribution or indemnification. Accordingly, the motion to dismiss the third-party complaint is granted.

. In opposition to the motion, plaintiff contends, inter alia, that the Act has no impact in this case because the Legislature did not amend General Municipal Law § 207-c, the statute under which she received payments from the County. While the County contends that the Act’s new bar to third-party actions is equally applicable where benefits are paid under General Municipal Law § 207-c, relying upon O’Dette v Parton (190 AD2d 1074 [4th Dept 1993]), the court does not reach this issue. In this case, "plaintiff [would] not [be] aggrieved by the dismissal of the third-party action because [s]he did not and could not sue the third-party defendant directly” (see, Chaitovitz v Lewis, 222 AD2d 392, 393 [2d Dept 1995]). For that reason, plaintiff has no standing to challenge this motion (cf., Tynon v McClain & Son, 131 Misc 2d 203, 204 [Sup Ct, St. Lawrence County 1986]). Significantly, Space Saver does not rely upon the argument proffered by plaintiff.

. "Statutes will not be construed as to render them ineffective” (McKinney’s Cons Laws of NY, Book 1, Statutes § 144).

. Together these sections implement the repeal of Dole liability except in "grave injury” cases.

. Subject to certain exceptions not relevant to this discussion.