[657 NYS2d 711]

RAYMOND A. MORALES, Plaintiff, v WALTER J. GROSS et al.,
Defendants, and VANDERBILT ASSOCIATES, Defendant and
Third-Party Plaintiff-Respondent. ULLMAN COMPANY, INC.,
Third-Party Defendant-Appellant.

Second Department, April 21, 1997

## APPEARANCES OF COUNSEL

*Goldberg & Carlton,* New York City *(Gary M. Carlton, Robert Goldberg* and *Steven S. Efron* of counsel), for third-party defendant-appellant.

*Kelly & McGlynn,* New York City *(Martin M. McGlynn* of counsel), for defendant third-party plaintiff-respondent.

## OPINION OF THE COURT

THOMPSON, J.

■ The principal issue before us is whether certain sections of the so-called Omnibus Workers' Compensation Reform Act of 1996 (L 1996, ch 635, §§ 2-9 [hereinafter the Act]) should be applied retroactively to cases pending at the time of their enactment. We conclude that they should not, and affirm the order appealed from.

The facts reveal that the plaintiff Raymond Morales allegedly sustained personal injuries while in the employ of the third-party defendant The Ullman Company, Inc. (hereinafter Ullman). Ullman leased the premises where Morales was working from the third-party plaintiff Vanderbilt Associates (hereinafter Vanderbilt). The plaintiff commenced a personal injury action against Vanderbilt, after which Vanderbilt commenced a third-party action against Ullman, seeking contribution and/or indemnification. Ullman subsequently moved to dismiss the third-party complaint, arguing, *inter alia,* that, pursuant

# 9

# 9

to the lease, it had obtained liability insurance for the benefit of both itself and Vanderbilt. According to Ullman, the third-party action was barred by the so-called "antisubrogation rule" since the insurance carrier, allegedly the real party in interest, was effectively subrogating to a claim against its own insured—Ullman—for a risk covered by the policy. The Supreme Court denied Ullman's motion.

While the instant matter was pending before this Court, the Legislature adopted the Act. Among other things, the Act amended Workers' Compensation Law § 11 by eliminating, except in cases of "grave injury",[1] an employer's liability "for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment" (Workers' Compensation Law § 11, as amended by L 1996, ch 635, § 2). The intended effect of the amendment was to abolish most third-party actions under *Dole v Dow Chem. Co.* (30 NY2d 143) by which defendants, facing suits by injured employees, seek contribution or indemnity from an employer who would be immune from direct suit by the injured employee *(see,* L 1996, ch 635, § 1; NY Assembly Mem in Support, 1996 McKinney's Session Laws of NY, at 2565). The Act mentions nothing about retroactive application of the subject sections, indicating only that they are to take "effect immediately" (L 1996, ch 635, § 90). Under the circumstances, we conclude that the relevant sections of the Act are inapplicable to the subject third-party action.

Analysis begins with the well-settled principle that statutes are presumptively prospective in their application absent an express legislative intent to the contrary *(see, Matter of Deutsch v Catherwood,* 31 NY2d 487, 489-490; *see also, Matter of Duell v Condon,* 84 NY2d 773, 783; *Dorfman v Leidner,* 76 NY2d 956, 959; *Matter of Thomas v Bethlehem Steel Corp.,* 63 NY2d 150, 154; *Matter of Beary v City of Rye,* 44 NY2d 398; *see also, Becker v Huss Co.,* 43 NY2d 527, 540; *Matter of Bac v State of N. Y. Off. of Mental Health,* 203 AD2d 283; McKinney's Cons Laws of NY, Book 1, Statutes § 51 [b], [c]; 2 Sutherland Statutory Construction § 41.02, at 341-342 [Singer 5th ed]; *Landgraf v USI Film Prods.,* 511 US 244). Indeed, "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness

---

1. There is no claim that the plaintiff's injury qualifies as a "grave injury" within the meaning of Workers' Compensation Law § 11 (as amended by L 1996, ch 635, § 2).

dictate that individuals should have an opportunity to know what the law is and conform their conduct accordingly; settled expectations should not be lightly disrupted" *(Landgraf v USI Film Prods., supra,* 511 US, at 265; *Matter of Chrysler Props. v Morris,* 23 NY2d 515, 522). The foregoing principle comports with "another venerable rule of statutory interpretation, *i.e.,* that statutes affecting substantive rights and liabilities are presumed to have only prospective effect" *(Bennett v New Jersey,* 470 US 632, 639). Significantly, the principle requiring a clear legislative expression that retroactive application was intended is an important one, since such a statement constitutes evidence that the Legislature has affirmatively assessed the potential for unfairness created by retroactivity and concluded that it is an acceptable price to pay for the anticipated benefits *(cf., Matter of Chrysler Props. v Morris, supra,* at 518; *Landgraf v USI Film Prods., supra,* 511 US, at 272-273).

Here, the Act itself contains no express statement—in fact, no statement at all—indicating that the Legislature intended sections 2 through 9 of the Act (L 1996, ch 635, §§ 2-9) to apply to actions pending at the time of their passage. Although section 90 of the Act indicates that sections 2 through 9 are to become "effect[ive] immediately" (L 1996, ch 635, § 90), where a statute employs this phrase, "it does not have any retroactive operation or effect" (McKinney's Cons Laws of NY, Book 1, Statutes § 51 [b], at 92; *accord, Matter of Moynihan v New York State Employees' Retirement Sys.,* 192 AD2d 913; *Fuerst v Fuerst,* 131 AD2d 426; *M&G Stromer v Granata,* 124 Misc 2d 934, 935; *Murphy v Board of Educ.,* 104 AD2d 796, *affd* 64 NY2d 856). Further buttressing this conclusion is the fact that section 90 of the Act, which makes reference to certain sections of the Act which are to apply retroactively, makes no similar mention of the provisions at issue here (L 1996, ch 635, § 90). If the Legislature intended the repeal of liability under *Dole v Dow Chem. Co.* (30 NY2d 143, *supra)* to apply to pending actions, it could have easily indicated as much, as it did with other sections of the Act *(see, Frycek v Corning Inc.,* 171 Misc 2d 220; *Flynn v New York Life Ins. Co.,* NYLJ, Oct. 24, 1996, at 31, col 3 [Sup Ct, Suffolk County]).

Nor does the legislative history contain any clear pronouncement indicating that dismissal of pending actions was intended by the framers of the Act. Although the Governor's approval memorandum recounts that retroactive "repeal" of *Dole v Dow Chem. Co. (supra)* was intended (Governor's Mem approving L 1996, ch 635, 1996 McKinney's Session Laws of NY, at 1912),

very explicit statements made by one of the Act's sponsors during actual debate in the Legislature support precisely the opposite result, i.e., that prospective application was intended *(see,* NY Assembly Pub Information Off transcript of Proceedings on A 11331, July 12, 1996, at 618-625). Accordingly, the only contemporaneously made legislative statement which addresses the issue of retroactivity, unequivocally indicates that the relevant sections of the Act were to apply prospectively. Moreover, none of the other materials pertinent to the issue of legislative intent support the claim that application to pending matters was intended.

Section 1 of the Act, entitled "Legislative intent" states, among other things, that the Act should be "interpreted and implemented in the spirit in which [the Workers' Compensation Law] was first enacted", and that it was the Legislature's intent "to create a system which protects injured workers and delivers wage replacement benefits in a fair, equitable and efficient manner, while reducing time-consuming bureaucratic delays, and repealing *Dole* liability except in cases of grave injury" (L 1996, ch 635, § 1). A report issued in conjunction with the Act by the Assembly Majority Task Force on Workers' Compensation Reform indicates additionally that six consecutive years of double-digit increases in compensation premiums over several years in the late 1980's and early 1990 "cost thousands of jobs in New York, particularly in small business" and that an immediate reduction in rates was perceived as necessary in order to "make New York companies competitive with other states" (1996 Report of Task Force, at 3). The legislative memorandum filed in connection with the Act further discusses its objectives observing that "[t]he exclusive remedy, a cornerstone of the Workers' Compensation Law, is restored and reinforced under this bill by prohibiting third parties * * * from asserting *Dole,* or third-party, suits against the employer. This repeal of *Dole* will reduce workers' compensation premium costs without diminishing employees' legal rights against responsible third parties" (NY Assembly Mem in Support, 1996 McKinney's Session Laws of NY, at 2565). None of these materials states that the "repeal" of *Dole* liability was intended to apply to actions pending at the time the Act was passed.

Ullman further argues that the amendments are remedial, and that their reach must be retroactively extended in order to spread their benefits as broadly as possible (McKinney's Cons Laws of NY, Book 1, Statutes § 54 [a]). Ullman also contends

that the Act is corrective in nature and that absent transgression of a "vested right"—allegedly not present here—retroactive application of the Act to pending actions is appropriate. We decline to place undue reliance on interpretative maxims of statutory construction such as "remedial" and "vested rights" (cf., Becker v Huss Co., supra, 43 NY2d, at 540; see also, 2 Sutherland, Statutory Construction § 41.05, at 369 [Singer 5th ed]). Whether the Act can be applied to pending actions as "remedial", without any directive that such a result was intended, cannot be answered by slotting the law into precast niches or categories (Becker v Huss Co., supra, at 540). Rather, analysis is more productively furthered by examining the nature of the Act and its objectives, the reasonable expectations of those affected by it, and the potential for unfairness created by retroactivity (Becker v Huss Co., supra; Matter of Chrysler Props. v Morris, supra, at 518; Landgraf v USI Film Prods., supra, 511 US, at 272-273; 2 Sutherland Statutory Construction § 41.05, at 369 [Singer 5th ed] ["the question whether a retroactive application of a new law is fair and just should afford more meaningful standards of judgment than either catchpenny phrases or the ambivalent concept of 'vested' (rights)"]).

In short, the purpose of the subject provisions was to abolish most third-party actions so as to enhance the exclusivity of the Workers' Compensation Law, thereby reducing insurance premiums and decreasing the cost of doing business in New York—an objective achieved by effectively shifting liability to third parties who, under existing law, were entitled to seek equitable apportionment of liability from employers. The amendments therefore represent a material, substantive departure from prior New York policy, altering settled law governing the apportionment of damages in a workers' compensation context, dating back conceptually to 1938 when the Court of Appeals authorized a utility company which had been held liable for the death of an employee to seek indemnity from the decedent's employer (Westchester Light. Co. v Westchester County Small Estates Corp., 278 NY 175; Gleason v Holman Contract Warehousing, 170 Misc 2d 668; see also, 55 Siegel's Prac Rev [Mar. 1997], at 2). Moreover, while Ullman suggests that Dole's holding with respect to an employer's potential liability to third parties was immediately perceived as ill conceived and subject to revision, the Legislature subsequently codified it (see, Rock v Reed-Prentice Div., 39 NY2d 34, 39-40), indicating approval of what the Court of Appeals would later describe in an

analogous context as the "important policy" of apportioning fault according to each party's responsibility for the damages *(Garrett v Holiday Inns,* 58 NY2d 253, 258).

Viewed against this backdrop, and tempered by considerations of fairness, we find that prospective application coincides with the reasonable expectation that the "important policy" of apportioned fault[2] would not be extinguished so as to mandate wholesale dismissals of pending *Dole* actions and to immediately shift additional liability to the defendants who have commenced third-party proceedings. Moreover, we disagree with the assertion that the right to contribution is not a significant or matured right merely because the third-party plaintiff has not yet, and may never, recover anything on its claim. This contention is ultimately "no more convincing than an argument that the right of a plaintiff to recover damages in tort, or for that matter even in contract, is not vested until the amount of the damages has been determined at the trial" (55 Siegel's Prac Rev [Mar. 1997], at 2; *see also, Knapp v Consolidated Rail Corp.,* 171 Misc 2d 597, *supra).* To be sure, the framers of the Act intended to abolish most third-party *Dole* actions in order to buttress the exclusivity of the workers' compensation remedy and decrease spiraling insurance rates (L 1996, ch 635, § 1; NY Assembly Mem in Support, 1996 McKinney's Session Laws of NY, at 2565; 1996 Report of NY Assembly Majority Task Force on Workers' Compensation Reform, at 2). However, it does not follow from this intent that retroactive application, with its myriad of attendant complications, was also considered and approved by the framers of the Act. In the absence of any clear legislative expression that such a drastic result was intended, we decline to read into the Act an

---

2. Reliance upon the Court of Appeals holding in *Cooney v Osgood Mach.* (81 NY2d 66) for the proposition that the right to contribution is not an important one is misplaced. In *Cooney,* a choice of law case, it was argued that even though conflict of law principles required the application of Missouri law, New York should decline to apply it under the so-called "public policy" exception, narrowly applicable only "when otherwise applicable foreign law would 'violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal' " (81 NY2d, at 78, quoting *Loucks v Standard Oil Co.,* 224 NY 99, 111). In rejecting this claim, the Court in *Osgood* merely concluded that the failure of Missouri law to provide for third-party contribution would not offend any deeply rooted New York tradition. The Court in no way suggested, however, that a New York litigant's right to contribution in a purely New York matter is not a significant and important right *(see also, Knapp v Consolidated Rail Corp.,* 171 Misc 2d 597; 55 Siegel's Prac Rev [Mar. 1997], at 2).

14

unstated directive requiring the dismissal of all pending *Dole* actions *(see, Barabash v Farmingdale Union Free School Dist.,* NYLJ, Apr. 18, 1997, at 29, col 2 [Sup Ct, Nassau County]).

It has also been asserted that audit and assessment provisions of the Act (L 1996, ch 635, §§ 87, 88) constitute some evidence that the framers intended the subject amendments to apply retroactively since, purportedly, these provisions would have no application absent retroactive application *(see, Majewski v Broadalbin-Perth Cent. School Dist.,* 169 Misc 2d 429). In sum, section 88 of the Act calls for, *inter alia,* an audit by the State Superintendent of Insurance of all workers' compensation carriers, and the State Insurance Fund, to determine, as of December 31, 1996, the value of what is referred to as the reserve adjustment in light of the potential reduction in liability occasioned by the subject amendments (L 1996, ch 635, § 88). Section 87 imposes a $98 million "special assessment" which is to be deposited in the general fund (L 1996, ch 635, § 87).

Reliance upon these relatively obscure accounting provisions would require us to presume that the Legislature selected a surprisingly circuitous and indirect means of conveying its intent. Indeed, there has been no consensus reached among courts and commentators with respect to precisely how these sections should be considered—or indeed, whether they have any relevance at all to the issue of what the Legislature may have intended *(see, Weiner v Lincoln/ A. Pentair Co.,* NYLJ, Mar. 25, 1997, at 30, col 5; *Majewski v Broadalbin-Perth Cent. School Dist., supra; Johnson v Space Saver Corp.,* 172 Misc 2d 147; *but see, Knapp v Consolidated Rail Corp., supra; Quito v Cannon U.S.A.,* NYLJ, Mar. 25, 1997, at 31, col 3 [Sup Ct, Suffolk County]; *Frycek v Corning Inc.,* 171 Misc 2d 220, *supra; Materna v ZCWK Assocs.,* NYLJ, Feb. 13, 1997, at 31, col 1; *see also,* Siegel, Outside Counsel, *Conflicts Over Retroactivity of 3 New Laws: Malpractice, Employers, Summary Judgment,* NYLJ, Mar. 31, 1997, at 1, col 1; Shoot, Letter to Editor, *Retroactivity of Bill: Irrational Inference,* NYLJ, Jan. 16, 1997, at 2, col 6).

To the extent that these provisions can be utilized as any type of barometer of legislative intent, we concur in the view that they would have meaning under a purely prospective application of the statute, since under such circumstances, the number of future claims anticipated by compensation carriers

would still be actuarially reduced (1996 Report of NY Assembly Majority Task Force on Workers' Compensation Reform, at 31), warranting a reduction in the reserves required under Insurance Law § 1303 *(see, Knapp v Consolidated Rail Corp., supra; Frycek v Corning Inc., supra; Quito v Cannon U.S.A., supra; see also,* Shoot, Letter to Editor, *Retroactivity of Bill: Irrational Inference,* NYLJ, Jan. 16, 1997, at 2, col 6). Additionally, and as one commentator has suggested, the $98 million assessment provided for in section 87 of the Act (L 1996, ch 635, § 87) supplies no clear evidence that the subject provisions were intended to apply to pending actions: "Indeed, the fact that the [$98 million] sum is *so low* ultimately works against rather than for the insurers' argument. In this regard, while 98 million dollars may seem like a lot of money, that sum is dwarfed by the benefit that insurers would receive from retroactive dismissal of claims covering years and years of premiums. By way of comparison, when the Governor and the Legislature took $98 million from the compensation carriers, they also took $481 million from the Medical Malpractice Insurance Association, and they effected the latter assessment without making any corresponding change in the malpractice law" (Shoot, Letter to Editor, *Retroactivity of Bill: Irrational Inference,* NYLJ, Jan. 16, 1997, at 2, col 6, n 1, citing Albany Times-Union, *1.3 B[illion] in One-Shots Plugs Budget Gaps,* July 18, 1996, at B2; *see also,* 55 Siegel's Prac Rev [Mar. 1997], at 1-3).

In short, the text of the Act, the discernable legislative intent, and the implications of applying the amendments to pending actions, suggest that the subject amendments should be accorded a prospective application.

Having concluded that the relevant provisions of the Act are to be prospectively applied, we must determine whether the Supreme Court properly denied the motion of employer Ullman to dismiss the third-party action on the ground that it violated the antisubrogation rule. Under the antisubrogation rule, an insurer "has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered" *(North Star Reins. Corp. v Continental Ins. Co.,* 82 NY2d 281, 294; *see also, Pennsylvania Gen. Ins. Co. v Austin Powder Co.,* 68 NY2d 465). The rule bars an insurance carrier from passing the risk of loss from itself to its own insured, thus denying the policyholder the very coverage it purchased *(see, Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra,* at 471).

Here, the record reveals that the plaintiff's employer, Ullman, obtained liability insurance on its own behalf and on behalf of Vanderbilt, its landlord, and that the policy excluded coverage for "bodily injury" to employees arising out of and in the course of their employment. The policy's coverage section contains an exception to the above exclusion, which states, *inter alia,* that the bodily injury exclusion would not apply to liability for damages "[a]ssumed in a contract * * * that is an 'insured contract' " *(see, Tempesta v City of New York,* 214 AD2d 723; *Levinson v 595 S. Broadway Corp.,* 216 AD2d 367).

Significantly, the introductory comments to the policy's coverage section plainly state that words and phrases in quotation marks, such as the phrase "insured contract", have "special meaning[s]", as set forth in section V of the policy. However, section V of the policy was not made part of the record, and Ullman failed to come forward with evidentiary proof demonstrating that its lease with Vanderbilt falls within the policy's exception for an "insured contract" *(see, State of New York v U.W. Marx, Inc.,* 209 AD2d 784, 785-786). Inasmuch as Ullman failed to demonstrate that the plaintiff's personal injury claim constituted a risk for which it was covered under the policy, the Supreme Court, Kings County, properly denied Ullman's motion to dismiss the third-party complaint pursuant to the antisubrogation rule *(see, North Star Reins. Corp. v Continental Ins. Co., supra).* Thus, the order appealed from is affirmed.

COPERTINO, J. P., KRAUSMAN and FLORIO, JJ., concur.

Ordered that the order is affirmed, with costs.