OPINION OF THE COURT
William F. O'Brien, III, J.
The underlying action arises from a motor vehicle accident occurring on July 9, 1997 in the Town of Reading, Schuyler County, in which plaintiff, a member of a construction crew for third-party defendant Chemung Contracting Corporation (hereinafter Chemung), was injured when defendant Grantling’s tractor-trailer ran over a fire hose stretched across State Route 14, causing the hose to either whip up and strike plaintiff in the head or lasso plaintiff around the legs and throw him to the ground. Plaintiff alleges that defendant Grantling caused his injuries by negligently operating the tractor-trailer he was driving, and that defendant H.E.P. Materials Corporation (hereinafter H.E.P.) is also responsible for his injuries as the employer of defendant Grantling. Both defendants move for summary judgment in their favor, dismissing plaintiffs complaint. Defendants impleaded third-party defendant Chemung, seeking indemnification or contribution for any damages which may be awarded to plaintiff as a result of this action. Chemung *112 now moves for summary judgment in the third-party action on the ground that plaintiff has not suffered a “grave injury” as is statutorily required to sustain a third-party action under these circumstances.
Statement of Facts
A. Circumstances Leading to Plaintiff’s Injury
The record before the court, upon the submissions of the parties, establishes the following facts regarding the event that caused plaintiffs injuries. During the summer of 1997, plaintiff was a member of third-party defendant Chemung’s work crew which was performing ongoing New York State Department of Transportation (hereinafter NYSDOT) contract construction work on State Route 14 in the Town of Reading. State Route 14 runs north and south between the City of Geneva and the Town of Horseheads. On July 9th, in overcast and rainy conditions, the work crew was assigned to pour concrete headwalls around the culvert pipes that ran beneath the surface of the road. The stretch of State Route 14 upon which the crew was assigned to work was flat and straight, and the posted speed limit of 55 miles per hour had not been reduced by sign or other traffic control device. The construction area was marked with a sign indicating “Road Work Ahead” that was placed approximately 1,000 feet from the site of the accident, and a “No Shoulder” sign placed about 120 meters before the accident site. There is some indication, although it is disputed, that a “Flagman Ahead” sign was also in place near the construction site, although no flagman was actually present there.
On that date, defendant Grantling was a truck driver for defendant H.E.P. and was assigned to deliver a load of heating, electrical and plumbing materials from H.E.P.’s warehouse in Geneva to one of its retail stores in Horseheads. Defendant Grantling made this delivery for H.E.P. on a weekly basis. The delivery required him to travel south on State Route 14 through an area which included the site of Chemung’s construction work. Defendant Grantling admits that he had traveled this route several times in the weeks prior to July 9th, and that he was familiar with the ongoing construction project.
According to the deposition testimony of witnesses James Allison, the NYSDOT site engineer for the State Route 14 project, and Jeremy Sieve, the NYSDOT site inspector assigned to the project on July 9th, heavy rains had caused standing water to accumulate in the forms that were built around the culvert pipes to aid in pouring the concrete. Witness Sieve stated that *113 because this standing water could have compromised the strength and integrity of the concrete, the work crew was ordered to “dewater” the forms using a gasoline-powered pump. To facilitate the dewatering process, a two- and one-half-inch hose was attached to the pump.
As part of the crew’s attempt to dewater a location on the west side of the road, the hose was placed so as to discharge the water to a position north of where the concrete was to be poured. This practice proved futile, as the water simply flowed back toward the culvert pipe and reaccumulated in the place from which it was being pumped. Witness Sieve then suggested that the hose be run through the culvert pipe to discharge the water on the east side of the road. However, the hose was instead placed across the surface of State Route 14 in order to discharge the water to the east side of the road. Crew member Wes Corby[1] testified that the hose was placed across the road by another crew member, John Watkins.
At some point after the hose was placed across the road surface, Corby and plaintiff Way attempted to remove the hose from the roadway. As they were attempting to move the hose, Corby noticed defendant Grantling’s truck approaching, and he dropped the hose and gestured to the truck to slow down. Defendant Grantling stated that he recalls seeing a person dressed in an orange hat and an orange vest or jacket “slowing traffic and waving it on through.” Corby testified that he never made any motion to wave traffic through, and that he and plaintiff tried to flee when they realized that the truck was going to run over the hose. All parties concur that as defendant Grantling’s truck passed the construction site, the hose was caught up in the double wheels of the trailer, causing it to fly up in a whip-like manner. The metal coupling at the end of the hose struck plaintiff in the head, knocking him unconscious.
Defendant Grantling testified that after he passed the construction site, he continued traveling southbound on State Route 14, unaware that he had struck anything or that anyone had been injured. He was later stopped by State Police in the nearby town of Montour Falls, where he was informed of the accident and taken in for questioning.
B. Assessment of Plaintiff’s Injuries
The record before the court, upon the submissions of the parties, establishes the following facts regarding the extent of *114 plaintiff Way’s injuries suffered as a consequence of the aforementioned events of July 9, 1997. Plaintiff Way has undergone extensive medical and psychological diagnosis and treatment during the past three years. In his complaint, plaintiff recites, inter alia, the following injuries: a closed head injury resulting in dizziness, vertigo, seizures, loss of memory, loss of cognitive functioning, severe headaches and difficulty with his eyesight, injuries to his cervical lumbar and sacral spine, and injury to his left hip. Among the proof submitted regarding the severity of plaintiffs injuries and their effect on his prospects for returning to gainful employment are the affidavits and sworn reports of 15 experts, ranging from plaintiffs primary care physician to neurologists, neuropsychologists, cognitive and vocational rehabilitation specialists, optometrists and psychiatrists. The conclusions drawn by these experts vary widely, with some determining that plaintiff is totally and permanently disabled and others declaring that plaintiffs problems are chiefly psychological, and that he is ready and able to return to the work force immediately. It is notable that nearly all experts offering an opinion agree as to the character of plaintiffs injuries, but there is significant disagreement about the over-all effect of these injuries on his ability to return to the workplace.
Relevant Law/Analysis
In order to obtain summary judgment, it is necessary that the movant establish a cause of action or defense “sufficiently to warrant the court as a matter of law in directing judgment” in its favor. (CPLR 3212 [b].) This must be accomplished by the tender of evidentiary proof in admissible form. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979].) The rule is more flexible for the party opposing a motion for summary judgment, who may be allowed to demonstrate an acceptable excuse for a failure to meet the strict requirement of tender in admissible form. (Zuckerman v City of New York, 49 NY2d 557 [1980].)
The initial burden is on the movant to demonstrate the absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. (Friends of Animals v Associated Fur Mfrs., supra, at 1067-1068.) If the movant meets his burden, it becomes incumbent upon the nonmoving party to produce proof, in admissible form, that establishes the existence of triable facts. (Id.) It is significant to note that, in determining the relative success of the parties in meeting these *115 burdens, plaintiff is entitled to have all proof read in the light most favorable to him and to have the benefit of reasonable inferences to be drawn from the proof. (See, e.g., McGill v Bohack Corp., 69 AD2d 853 [2d Dept 1979].)
A. Motion for Summary Judgment of Defendants Grantling and H.E.P.
Defendants Grantling and H.E.P. argue that summary judgment in their favor is required because the evidence fails to establish that defendant Grantling operated defendant H.E.P.’s tractor-trailer negligently and caused plaintiff’s injuries. Instead, they claim that the act of placing the hose across the road surface was the sole cause of the accident and plaintiffs injuries. None of the parties have attempted to contradict defendants’ assertion that the act of third-party defendant Chemung’s employee of placing the hose across the road surface was negligent. Thus, plaintiff Way must establish some dispute as to whether the actions of defendant Grantling were a significant factor in causing plaintiff Way’s injuries.
Defendants’ argument that Grantling “simply was not negligent” relies primarily on Grantling’s deposition testimony, in which he claims to have been driving 30 to 40 miles per hour at the time of the accident and that he was preceded to the construction site by another car and was merely following the flow of traffic in passing the accident site. In response, plaintiff offers the affidavit of witness Dale Demers, a Chemung work crew member who alleges that he saw defendant Grantling’s vehicle pass through the construction site at a speed of 60 miles per hour without slowing down and without any vehicles in front of him. Plaintiff contends that the Demers affidavit, coupled with the testimony of witness Corby, presents several issues of fact with regard to defendant Grantling’s conduct on July 9, 1997, namely: whether defendant Grantling was traveling in excess of the posted speed limit at the time of the accident; whether defendant Grantling was traveling at an unreasonable or imprudent rate of speed through a construction zone and considering the weather conditions present on July 9, 1997; whether defendant Grantling saw what was there to be seen, specifically the construction site and the hose drawn across the road surface; and whether defendant Grantling responded appropriately to the actions of crew member Corby in attempting to slow defendant Grantling’s truck down.
The contradictory versions of the accident alleged by Grantling and Demers are sufficient to establish questions of fact regarding the defendants’ negligence and the proximate *116 cause of plaintiffs injuries. Further, underscoring the contrasting nature of these accounts is the fact that none of the other eyewitnesses to the accident have made a definitive estimate of how fast defendant Grantling proceeded past the construction site. Grantling was under a duty to exercise reasonable caution as he approached the construction area. (Vehicle and Traffic Law § 1146.) Under the facts as presented in the Demers affidavit, Grantling violated this duty by passing through the construction site at an excessive rate of speed. Furthermore, Grantling was operating under a duty to see that which, under the facts and circumstances, he should have seen by the proper use of his senses. (Pedersen v Balzan, 117 AD2d 933 [3d Dept 1986].) Grantling’s own testimony, as well as the Demers affidavit, suggests that he may have been negligent in failing to recognize and react appropriately to the danger presented by the hose in the road. Thus, triable questions of fact do exist as to whether defendant Grantling acted negligently, and whether he and defendant H.E.P. are liable to plaintiff Way for the injuries he suffered as a result of Grantling’s conduct.
B. Third-Party Defendant Chemung’s Motion for Summary Judgment
Third-party defendant Chemung contends that summary judgment must be granted in its favor because plaintiff Way has not suffered a “grave injury.” In order to properly state a third-party claim for indemnification or contribution by the employer of a plaintiff, a defendant must show by competent medical evidence that the plaintiff suffered a “grave injury.” (Workers’ Compensation Law § 11.) Among the injuries listed by the statute as a grave injury is “an acquired injury to the brain caused by an external physical force resulting in permanent total disability.” (Ibid.) Chemung’s specific claim is that plaintiff’s injuries have not caused him permanent total disability as required by the statute. Chemung does not challenge the assertion of third-party plaintiffs/defendants Grantling and H.E.P. that plaintiff has suffered an “acquired injury to the brain” which was “caused by an external force,” and the record clearly supports this claim.
Although Workers’ Compensation Law § 11 doesn’t specifically define “permanent total disability,” Workers’ Compensation Law § 15 (1) offers some assistance in determining if plaintiff Way’s injuries meet that standard. In the context of determining what level of compensation an injured worker is entitled to, permanent total disability must be evaluated on a case-by-case basis in the absence of certain injuries such as *117 loss of both arms, both hands, both legs or both feet. (Workers’ Compensation Law § 15 [1].) Such a determination would normally be made by the Workers’ Compensation Board upon submission of all the pertinent evidence. In the context of the present case, it is therefore appropriate for the court to make such a factual evaluation of the evidence.
In arguing that plaintiff Way’s injuries have not caused him permanent total disability, third-party defendant Chemung relies heavily upon the recently decided case of Barbieri v Mount Sinai Hosp. (264 AD2d 1 [1st Dept 2000]). In that case, the First Department upheld an IAS Court’s grant of summary judgment in favor of a third-party defendant employer where the employee, a carpenter working on-site at third-party plaintiff Mount Sinai Hospital, fell and suffered injuries that were alleged to be grave. Specifically, the plaintiff suffered, inter alia, what were described as neurological injuries, concussion, amnesia and other memory dysfunctions, and a brain lesion which were all alleged to have resulted from his workplace accident. The court found that the plaintiffs pleadings, an MRI report and a neuropsychological evaluation showed periods of disorientation and short-term memory loss, slowness of speech and distractability, and underperformance on neurological tests, and that this was not sufficient to establish permanent total disability. Because of the similarity between the injuries to the Barbieri plaintiff and plaintiff Way in the present case, third-party defendant Chemung urges that Barbieri compels dismissal of the present third-party action.
The Barbieri holding is neither controlling here nor particularly persuasive. The amount and conclusiveness of the proof available in the present case is significantly greater than the evidence enumerated by the Barbieri Court. While the Barbieri plaintiff offered a minimal amount of evidence in support of his injury claim, the amount of evidence available to establish the extent of plaintiff Way’s disability is quite substantial. As detailed in the statement of facts supra, the record before the court includes the affidavits and sworn medical reports of 15 experts, including treating physicians and counselors, independent medical examiners retained by the workers’ compensation insurance carrier, and experts retained by third-party defendant. Most notable in the proof are the affidavits of Anthony Blumetti, Ph D (plaintiffs treating neuropsychologist), Donald Pirodsky, M.D. (plaintiffs treating psychiatrist), Hassan M. Shukri, M.D. (plaintiffs treating neurologist), Bradley Berry-hill, M.D. (plaintiffs primary care physician) and Varda Hoi *118 land Witter, M.S. (plaintiffs treating cognitive rehabilitation therapist), which all unequivocally conclude that plaintiff is permanently and totally disabled as a result of the injuries he suffered on July 9, 1997. Each of these experts has observed plaintiffs injuries in the context of continuing treatment and consistently reported the persistent occurrence of severe headaches, dizziness, inability to concentrate for long periods of time, hypersensitivity to bright light, loss of short-term memory and feeling “spaced out” after driving, as well as depression symptoms and unresolved anger resulting from plaintiff Way’s frustration over his inability to support himself following the accident. Furthermore, nearly every expert offering an opinion during the three years of plaintiffs treatment concurs that his symptoms are problematic enough to preclude him from engaging in any sustained activity, whether it be gainful employment or volunteer efforts.
Also noteworthy are the sworn medical reports of William Stewart, M.D. (an independent neurosurgeon), Robert Seidenberg, M.D. (an independent psychiatrist), and Berton Shayevitz, M.D. (an independent examining physician). Each of these examinations occurred in 1999, and as such, the reports are not the most current medical information available. However, some of the information contained therein supports the conclusions reached by more recent examiners.
In February of 1999, Dr. Shayevitz described plaintiffs symptoms as “largely incapacitating,” and described his prognosis as “guarded” in light of plaintiffs failure to show significant improvement despite nearly two years of treatment. Dr. Stewart declared plaintiff to be temporarily totally disabled in June of 1999, finding many of the same physical symptoms as plaintiffs treating physicians. However, Dr. Stewart added that plaintiffs chances for improvement would be significantly reduced by verification of injury to the brain. Dr. Seidenberg, while stating that no strictly psychiatric reasons existed to inhibit plaintiffs return to the workplace, stated that he could not ascertain the extent of plaintiffs organic deficits and thus deferred diagnosis to a neurologist.
While none of these statements alone is sufficient to establish as a matter of law that plaintiff has suffered a grave injury, they support the conclusions drawn by plaintiffs treating experts. In fact, when taken in conjunction with the pleadings of plaintiff and the affidavit and supporting papers of third-party plaintiffs, they are probably sufficient to establish a question of fact on the issue, although such a finding is not necessary in light of the other evidence available.
*119 An opposing view is offered by third-party defendant Chemung in the affidavit of Melvin J. Steinhart, M.D. Dr. Steinhart characterizes plaintiff Way’s problems as chiefly psychological, and he expresses doubt over whether any of the symptoms are the product of an organic deficit. Instead, Dr. Steinhart opines that plaintiff Way’s problems with memory and absentmindedness arise from preoccupation and anger. He concludes that plaintiff Way is currently “able to return to some type of remunerative activity” and that his continued failure to do so is based on “unconscious factors related to the ongoing litigation.” Also offered by third-party defendant Chemung is the affidavit of Leona H. Liberty, Ed. D., a vocational rehabilitation specialist who concurs that plaintiff Way is not totally and permanently disabled and could return to the work force immediately, although not as a heavy equipment operator. She lists several occupations for which she believes plaintiff is well suited, including package assembly, inventory clerking and postal room clerking.
The allegations contained in the affidavits of Drs. Steinhart and Liberty satisfy third-party defendant Chemung’s burden of establishing a factual scenario in which it would be entitled to summary judgment. (Harris v Metropolitan Life Ins. Co., 183 Misc 2d 431, 433; but see, Ibarra v Equipment Control, 268 AD2d 13 [2d Dept 2000].)[2] When considered together with the pleadings, affidavits and sworn medical records alleging plaintiff Way’s permanent and total disability, these affidavits only suffice to establish a dispute over the extent of plaintiffs injuries. Considering the substantial nature of the evidence contradicting the proof offered by movant Chemung, the existing questions of fact preclude a grant of summary judgment in favor of third-party defendant Chemung.
*120 To conclude otherwise places an overly restrictive interpretation on the statutory language of Workers’ Compensation Law §11. Several cases addressing the grave injury standard have cited the legislative history of the 1996 Omnibus Workers’ Compensation Reform Act (L 1996, ch 635) for the proposition that the intention of the Legislature was to “abolish such third-party actions and to restore a regime wherein workers’ compensation was the exclusive remedy.” (Barbieri v Mount Sinai Hosp., 264 AD2d 1, 6, supra; see, Castro v United Container Mach. Group, 273 AD2d 337 [2d Dept 2000].) Such a broad construction of the Act’s legislative intent renders the existence of an alternative remedy in grave injury situations superfluous. Had the Legislature intended to completely abolish such third-party actions, it would not have created specifically delineated exceptions to the rule prohibiting them. Holding that the evidence of plaintiff Way’s injuries is insufficient to create a question of fact would contradict the legislative intent to provide the opportunity for an alternative remedy where a question exists as to whether the plaintiff suffered a grave injury.
Chemung also raises a procedural issue in urging that its summary judgment motion must be decided solely on evidence submitted by itself and third-party plaintiffs Grantling and H.E.P. Chemung contends that plaintiff Way lacks standing to oppose its motion, and, as such, the court should not consider the eight affidavits from treating physicians provided by plaintiff as evidence of the severity of his injuries. Several reasons dictate that all of the evidence currently before the court should be considered in deciding Chemung’s summary judgment motion.
It is suggested in one commentary and several case decisions that a court presented with a motion such as the one in the present case is free to look to all the submitted evidence in determining the proper disposition for the motion. (See, Ibarra v Equipment Control, 268 AD2d 13, supra; Barbieri v Mount Sinai Hosp., 264 AD2d 1, supra; Brownstein v LeCroy Corp., 178 Misc 2d 197; see also, Proving “Grave Injury” in Tort Case So As To Sustain Impleader of Employer: Whose Burden, Plaintiffs or Defendant’s? Whose Decision, Court’s or Jury’s?, 92 Siegel’s Practice Review 1.) This suggestion is supported by the text of CPLR 1008, which provides that the rights of a third-party defendant are adverse to all other parties in the main and third-party actions. (Tynon v McClain & Son, 131 Misc 2d 203, 204; but see, Johnson v Space Saver Corp., 172 *121 Misc 2d 147, 149, n 1.) Such is particularly relevant here, where the injuries claimed by plaintiff Way are so severe that a potential jury award could far surpass the ability of defendants to pay the entire judgment. Without the possibility of indemnification or contribution in the action, a successful plaintiff would be substantially disadvantaged. Thus, the position of third-party defendant Chemung that plaintiff Way has not suffered a grave injury is adverse to that of plaintiff Way. Denying plaintiff the opportunity to challenge third-party defendant Chemung’s claim would substantially impair on plaintiff’s chances for maximum recovery in the event that liability is found against defendants Grantling and H.E.P. The interests of justice require that a party to an action be heard when a decision in that matter may affect a future right of that party. (Turrisi v Ponderosa, Inc., 179 AD2d 956, 957 [3d Dept 1992].)
Furthermore, plaintiff Way would have the right to seek leave of the court to supplement his pleadings with the affidavits that third-party defendant seeks to keep out of this motion. (CPLR 3025 [b].) Thus, plaintiff Way would be free to submit the proof he now offers in opposition to third-party defendant Chemung’s motion as an amendment to his pleadings, with leave of the court. Since leave to amend pleadings is to be granted liberally and denied only where unfair prejudice to an opposing party would result, such an amendment would likely be allowed. (Parsons v Borden, Inc., 273 AD2d 749 [3d Dept 2000].) As such, plaintiff’s proof in admissible form should not be ignored. A decision on a matter such as this should not be made on less than a full factual record.
For the reasons stated herein, the motion for summary judgment by defendants Grantling and H.E.P. is denied, as is the motion for summary judgment made by third-party defendant Chemung.

. Corby is described by several witnesses as being the site foreman for the job; however, he denies that he was, in fact, acting in that capacity on the day of the accident.

. Although the Ibarra Court disagrees with the Harris court’s reasoning that the summary judgment procedure followed in “serious injury” cases under section 5102 of the Insurance Law should apply in grave injury cases, the analysis of the Harris court is more compelling. Harris (supra) draws a logical analogy between serious injury cases and grave injury cases in determining that the movant seeking summary judgment bears the burden of establishing entitlement to a judgment. (See, Proving “Grave Injury” in Tort Case So As To Sustain Impleader of Employer: Whose Burden, Plaintiffs or Defendant’s? Whose Decision, Court’s or Jury’s?, 92 Siegel’s Practice Review 1 [Jan. 2000].) Thus, in a grave injury case, a third-party plaintiff facing a summary judgment motion need only show that a rational trier of fact could find a grave injury based on the available evidence. (Gaddy v Eyler, 79 NY2d 955, 956 [1992].) In holding that a third-party plaintiff must establish the existence of a grave injury in order to defeat a motion for summary judgment by a third-party defendant, the Ibarra Court appears to confuse the standard for summary judgment with the third-party plaintiff’s ultimate trial burden.